UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY BROOKS AND JOAN SILVERMAN,

                                        :

                Plaintiffs,                     Civil Action

                                          :         No. 05-10994-WGY

          v.

                                          :

AIG SUNAMERICA LIFE ASSURANCE
COMPANY,                                     :

                  Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ASSENTED-TO MOTION FOR LEAVE TO FILE A REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT AIG SUNAMERICA'S MOTION TO DISMISS

        Defendant AIG SunAmerica ("AIG SunAmerica") hereby moves pursuant to Local Rule 7.1(B)(3) for leave to submit a reply memorandum in further support of its motion to dismiss.  As grounds for this motion, AIG SunAmerica states as follows:

        1.      On July 25, 2005, AIG SunAmerica filed its motion to dismiss (Docket No. 6) and supporting memorandum (Docket No. 7).

        2.      On August 8, 2005 , Plaintiffs filed their opposition memorandum (Docket No. 8).

        3.      AIG SunAmerica's proposed reply memorandum, submitted herewith, concisely addresses Plaintiffs' arguments and cases.  AIG SunAmerica submits that it contains analysis and authority that will assist the Court in its consideration of Defendant AIG SunAmerica's Motion To Dismiss.

Dated: August 25, 2005                Respectfully submitted,
       Boston, Massachusetts

                                 /s/ James R. Carroll
                                James R. Carroll (BBO #554426)
                                Michael S. Hines (BBO #653943)
                                SKADDEN, ARPS, SLATE,
                                 MEAGHER & FLOM LLP
                                One Beacon Street
                                Boston, Massachusetts 02108
                                (617) 573-4800

                                Counsel for Defendant
                                AIG SunAmerica Life Assurance Company

## LOCAL RULE 7.1 CERTIFICATION

       I, Michael S. Hines, hereby certify that, in compliance with Local Rule 7.1(A)(2), I conferred with counsel for Plaintiffs regarding the filing of this motion and counsel for Plaintiffs assents to the relief sought by this motion.

Dated: August 25, 2005                 /s/ Michael S. Hines
                                  Michael S. Hines

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY BROOKS AND JOAN SILVERMAN,

                    :

                Plaintiffs,                  Civil Action

                    :              No. 05-10994-WGY

        v.

                    :

AIG SUNAMERICA LIFE ASSURANCE
COMPANY,                    :

                Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## [Proposed] REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT AIG SUNAMERICA'S MOTION TO DISMISS

### Preliminary Statement[1]

        The dispositive legal issue on this motion boils down to no more than this: is the conclusory "information and belief" allegation that AIG SunAmerica breached the terms of the Policy by increasing monthly COI rates in violation of unknown and unplead "procedures and standards" adequate to state a claim?  (Compl. ¶ 20.)  Plaintiffs do not identify -- either in the Complaint or their opposition papers ("Opposition") -- who "procedures and standards" they are referring to, or how those "procedures and standards" were purportedly breached.  Indeed, plaintiffs concede that they do not possess -- and do not know the content of -- the very "procedures and standards" on which their entire Complaint is based.[2]  Nor do plaintiffs even know if

---

[1]     Capitalized terms herein shall have the same meaning as in Defendant's Memorandum Of Law In Support Of Their Motion To Dismiss (Docket No. 7), which is cited herein as "Opening Brief at __."

[2]     Plaintiffs' Opposition To Defendant's Motion To Dismiss at 7 (Docket No. 8) (cited as "Opp. at __.").

such "procedures and standards" ever existed.  It should follow that a plaintiff cannot state a

claim for breach of a procedure or standard if the plaintiff (much like the defendant in this case)

does not even know what the procedure or standard says, or, indeed, if it ever even existed.

Guessing should not be enough.

       The Policy language concerning monthly COI rate increases does not mandate that

such "procedure and standards" exist, only that AIG SunAmerica abide by them if they do exist.

(See Compl. ¶ 19.)  AIG SunAmerica has searched its files and scoured the records at the

Massachusetts Division of Insurance ("MA DOI").  It does not know of any document filed by

any party with the MA DOI that constitutes the "procedures and standards" contemplated by the

Complaint.  Plaintiffs' conclusory assertions that AIG SunAmerica "failed to disclose the

underlying facts" is simply hollow in the absence of any suggestion of what these facts are.[3]

(Opp. at 1.)

       Nothing in the Complaint, and no explanation of the Complaint in plaintiffs'

Opposition, satisfies the requirement in this Circuit that facts supporting a breach of contract be

plead with substantial certainty.  Pure "information and belief" allegations of this sort are

insufficient as a matter of law, and fail to put AIG SunAmerica on notice of what it has allegedly

done wrong.

---

[3]    AIG SunAmerica cannot make heads or tails of the collection of correspondence attached
to the Opposition with respect to how that correspondence purports to relate to the issue of
"procedures and standards."  It does not appear to have any such relation.

**<u>Reply Points</u>**

1.    **Plaintiffs Concede That They Have Not -- And Cannot -- State With**
      ***<u>Substantial Certainty</u>* Facts Sufficient To State A Claim For Breach Of Contract**

Plaintiffs argue that "[a]lleging the existence of a contract, its breach and damages are all that is required [to state a claim for breach of contract]."  (Opp. at 7.)  But in <u>Doyle v. Hasbro, Inc.</u>, the First Circuit <u>rejected</u> just that argument, holding that "[p]laintiffs-appellants are mistaken in their belief that they 'need no more than to allege that the facts demonstrate a breach of that contractual relationship." 103 F.3d 186, 194 (1st Cir. 1996).  To the contrary, the First Circuit held that it was "essential" to plead with "substantial certainty" facts sufficient to establish a defendant's failure to perform. <u>Id.</u> at 194-95.

Rather than arguing that their failure to identify the "procedures and standards" nevertheless satisfies their burden of pleading a breach of contract with the requisite substantial certainty -- which, of course, it does not -- plaintiffs assert that AIG SunAmerica "failed to disclose" the necessary information.  (Opp. at 7-8.)  That argument is without merit.

<u>First</u>, plaintiffs read too much into the Policy language on which they rely.  The relevant contractual term provides that:

> Any change in [COI] rates will be in accordance with <u>any</u> proce-
> dures and standards on file with the Insurance Department of the
> jurisdiction in which this policy was delivered.

(Compl. ¶ 19 (emphasis added).)  The Policy does not provide that there "must" be or "shall" be "procedures and standards" on file at the MA DOI.  Rather, use of the term "any" plainly indicates that if such "procedures and standards" do in fact exist, then those will be complied with.  AIG SunAmerica has searched its files and scoured the records at the MA DOI.  It does not

3

know of any document that constitutes the unidentified "procedures and standards" upon which

plaintiffs base their entire Complaint.[4]

        <u>Second</u>, plaintiffs' conclusory assertions that AIG SunAmerica "failed to disclose

information to plaintiffs" and "continually misrepresented to plaintiffs that the COI Rate

Increases were authorized by the Rehabilitation Plan" seem to be premised on a misreading of the

Rehabilitation Plan.  (Opp. at 7.)  Plaintiffs assert that the restructuring of the block policies was

"temporary" pursuant to the Rehabilitation Plan.  (Opp. at 3, 8.)  But the plain terms of the

Rehabilitation Plan are to the contrary.  The restructuring of the policies was permanent, and Mr.

Silverman elected to receive a new policy by opting-into the Rehabilitation Plan.  (<u>See</u> Policy

attached to Opening Brief as Exhibit A.)  Indeed, as the chart below demonstrates, if -- as

plaintiffs argue -- the restructuring of Mr. Silverman's Policy was temporary, then this case

should be dismissed for the alternative reason that Mr. Silverman's Original Policy <u>does</u> <u>not</u> even

contain the provision that monthly COI rate increases will be made in accordance with "any

procedures and standards" on file at the MA DOI.  (<u>See</u> Original Policy at ¶ 12, attached hereto

as Exhibit 1.)[5]  Either way, there is no case.

———————————————

[4]      Pursuant to the Purchase and Sale Agreement between MBL Life and Anchor National
(the "Agreement"), AIG SunAmerica could increase the monthly COI rates for the entire block of
acquired policies by a specific percentage if the Aggregate Account Value of the block of
policies fell below 95% of the aggregate value of those policies as of December 31, 1997.  That
provision, however, provided for a one time, contingent increase and does not appear to have any
relationship to the unspecified "procedure and standards" upon which plaintiffs base their
Complaint.  Of course, there is no allegation in the Complaint that AIG SunAmerica did not
comply with that provision of the Agreement, nor could there be.

[5]      Copies of documents such as this, that are central to plaintiffs' claims but were not
attached to the Complaint, may be reviewed on a motion to dismiss without converting the
motion into one for summary judgment.  <u>Alternative Energy, Inc. v. St. Paul Fire & Marine Ins.
Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document, whose

(continued...)

| **Restructured Policy Language** | **Original Policy Language** |
|---|---|
| The monthly cost of insurance rate is based on the sex, age, and rate class of the insured. Monthly cost of insurance rates will be determined by us annually, by class, based on future expectations as to investment earnings, mortality, persistency, and expenses, including taxes. <u>Any change in rates will be in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which this policy is delivered.</u> Such cost of insurance rates will not be greater than those shown in the table of maximum monthly cost of insurance rates on page 15. (Opening Brief, Ex. A at ¶ 14 (emphasis added).) | The monthly cost of insurance rate is based on the sex, age, and rate class of the insured. Monthly cost of insurance rates will be determined by us from time to time based on our expectations of future mortality experience. Such cost of insurance rates will not be greater than those shown in the table of maximum monthly cost of insurance rates on page 27. (Ex. 1 at ¶ 12.) |

## 2.    **The Extraneous Materials Attached To The Opposition Add Nothing**

Plaintiffs attach extraneous materials to the Opposition, consisting of correspondence between a Mr. Richard P. Strutevant and AIG SunAmerica. (Opp. at Exs. 1-4.) Even if one deemed such correspondence as incorporated into the Complaint, none of it even touches upon the central issue of <u>what</u> are the "procedures and standards" that plaintiffs allege were violated. None of that correspondence (not even plaintiffs purported Ch. 93A demand letter attached to the Opposition at Exhibit 5) even references the "procedures and standards," instead stating that the monthly COI rates were increased "without any justification." (Opp., Ex. 5 at 1.) But the contract requires no particular explanation or "justification." Instead, it requires (i) that the rates not exceed the schedule included in the Policy, and plaintiffs have conceded that the monthly COI rate increases did not exceed the contractual limits (<u>see</u> Opp. at 4) and (ii) changes

---

[5]    (...continued)
authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.")

in monthly COI rates will comply with "any procedures and standards" on file with the MA DOI. (Opening Brief, Ex. A at ¶ 14.)  Indeed, plaintiffs' theory of a breach of the mysterious "procedures and standards" was raised for the first time in the Complaint, not the attached correspondence.  Put simply, that correspondence adds nothing to this motion.

### 3.    Plaintiffs' Conclusory Allegation Of Fraudulent Concealment Does Not Save Their Implied Covenant Of Good Faith And Fair Dealing Or Chapter 93A Claims

In its Opening Brief, AIG SunAmerica argued that plaintiffs' claims for (i) breach of the implied covenant of good faith and fair dealing (Count II) and (ii) violation of Ch. 93A (Count III) failed as a matter of law because allegations of a breach of contract, without more, are insufficient to state a claim under those theories.  (Opening Brief at 8-9.)  Plaintiffs do not dispute that a mere allegation of a breach of contract is insufficient to state a claim for breach of the implied covenant of good faith and fair dealing or for a violation of Ch. 93A.  Instead, plaintiffs argue (without any supporting precedent) that their single allegation of fraudulent concealment is adequate to plead the bad faith and deceptive conduct necessary to sustain those claims.  (Opp. at 8-10.)  But that argument makes no sense.

Under Massachusetts law, the doctrine of fraudulent concealment operates to toll the limitations period for an already accrued claim:

> If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

Mass. Gen. Laws ch. 260, § 12 (emphasis added).  A plain reading of the text of the statute demonstrates that allegations of fraudulent concealment only operate to toll a cause of action, not create one.

6

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must not only plead a breach of contract, but also must plead "additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 229 (D. Mass. 2005). Allegations that the statute of limitations are tolled through the doctrine of fraudulent concealment do not constitute "unfair[] leveraging" of the contract. Id. Similarly, while allegations of fraudulent concealment of previous deceptive conduct may be sufficient to toll the Ch. 93A limitations period, they do not serve as unfair or deceptive acts or practices in and of themselves.

4.    **Plaintiffs' Opposition Demonstrates The Inadequacy Of The Complaint's UCL Allegations**

Plaintiffs effectively concede -- as they must -- that to state a claim pursuant to the "unlawful" prong of the UCL, they must allege a violation of some law independent of the UCL. (Opp. at 12.) Although the Complaint does not identify any such violation, plaintiffs argue that the purported breach of the Policy violated 211 Mass. Code Regs. 95.06(2). (Id.) That regulation provides, in part, that "[e]ach filing for approval of a variable life insurance policy form shall include . . . the mortality, expenses and other risks which the insurer will bear under the policy." 211 Mass. Code Regs. 95.06(2) (emphasis added). But the Complaint's allegations concern the purported wrongful increase of monthly COI rates, not Defendant's seeking approval from the MA DOI of the form of the Policy. That regulation is simply inapposite.

Plaintiffs' argument that their allegations satisfy the "unfair" prong of the UCL is equally unavailing. (Opp. at 11-12.) Under California law, conduct is "unfair" under the UCL only if that conduct has the effect of violating a specific constitutional, statutory or regulatory provision. (Opening Brief at 12.) While plaintiffs assert that conduct can be "unfair" under the

7

UCL even if it is technically permissible, they do not argue that the alleged breach of contract "violates the policy or spirit of [a law] because [the breach is] comparable to or the same as a violation of the law . . . . <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 973 P.2d 527, 544 (Cal. 1999). Plaintiffs have not even attempted to allege a violation of any specific such provision.

<b><u>CONCLUSION</u></b>

For all of the foregoing reasons, and for the reasons cited in Defendant's Opening Brief (Docket No. 7), AIG SunAmerica's Motion to Dismiss should be granted in its entirety.

Dated: August 25, 2005
      Boston, Massachusetts

Respectfully submitted,

<u>/s/ James R. Carroll</u>
James R. Carroll (BBO #554426)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
AIG SunAmerica Life Assurance Company

# EXHIBIT 1



Newark, New Jersey 07101 — Since 1845

For the payment of premiums, we, THE
MUTUAL BENEFIT LIFE INSURANCE COMPANY,
insure the life of the insured named on page 3.

The proceeds of this policy are payable to the
beneficiary at the death of the insured before
the maturity date. We will pay them when we
receive due proof of the death of the insured.
The net cash value of this policy is payable to
the beneficiary if the insured is living on the
maturity date.

**Ten Day Right to Examine Policy**
Within 10 days after first receiving this policy,
the owner may return it to our home office or to
any of our agents. We will then cancel it from
the start and refund any premium paid.

PRESIDENT

SECRETARY

Adjustable Life Policy
Adjustable Death Benefit
Flexible Premium Payments
Death Benefit Payable before the Maturity Date
Net Cash Value Payable on the Maturity Date
Eligible for Dividends

*30*
C183

Adjustable Life Policy
Adjustable Death Benefit
Flexible Premium Payments
Death Benefit Payable before the Maturity Date
Net Cash Value Payable on the Maturity Date
Eligible for Dividends

C183                                    *1*



### Welcome To Mutual Benefit Life

Your policy represents a valuable piece of property. In choosing to buy it from us, you have selected a company that has worked hard for its policyowners since 1845. We pledge to do so for you.

We have tried to write your policy so that it is understandable. Of course, the language must comply with insurance laws and regulations. If any further explanation of policy terms is needed, just ask your agent or write to our home office.

We value your becoming a member of the Mutual Benefit Life family and urge you to exercise all the rights offered to you as a policyowner.

*R. J. Van Fossen*

CHAIRMAN OF THE BOARD

2
C183

29
C183

| POLICY NUMBER | AL 101,958 |
| SPECIFIED AMOUNT | $850,000 |
| BASIC AMOUNT | $25,000 |
| INSURED | DONALD L SILVERMAN |
| ISSUE DATE | May 1, 1984 |
| POLICY YEAR DATE | May 1, 1984 |
| MATURITY DATE | May 1, 2012 |
| ...GE 67, Male | NON-SMOKER |

...REMIUMS

...itial premium of $41,666.67 due on policy
...ar date, for first policy year. Planned
...remium of $18,415.59 payable annually
...hereafter to maturity date.

...OLICY DATA

...remium expense charge: 10% of all premiums
...aid.

...olicy loan interest rate: 8% effective
...nnual rate.

...ash value interest rate: Current interest
...te is 0.986358% per month; 12.5% effective
...nnual rate, for first policy year.
...uaranteed minimum rate is 0.367481% per
...onth; 4.5% effective annual rate.

...onthly expense charge: $422.00 for each of
...rst 12 policy months.

...ONTINUATION OF INSURANCE

...en if planned periodic premiums are not
...id as planned, coverage as provided by the
...rms of this policy will continue until
...ermination. See Section 5, Termination.

...ASIS OF VALUES

...nimum cash values and reserves are based on
...e 1958 Commissioners Standard Ordinary
...ortality Table and interest of 4.5% per
...ear. A statement of the method of computing
...lues has been filed with The Commonwealth
...f Massachusetts, Division of Insurance. All
...lues are not less than those required by
...e laws of that state.

# *A Guide*

## TO THE SECTIONS OF THIS POLICY

Section
1  Policy Terms
2  Periodic Report
3  Entire Contract
4  Incontestability
5  Termination
6  Premiums
7  Suicide Exclusion
8  Amount of Proceeds
9  Misstatement of Age or Sex
10  Change in Specified and Basic Amounts
11  Cash Value
12  Monthly Deduction and Cost of Insurance
13  Lapse
14  Reinstatement
15  Dividends
16  Loans
17  Surrender for Cash
18  Withdrawal of Part of Cash Surrender Value
19  Ownership
20  Beneficiary
21  Exchange of Policy
22  Change in Maturity Date
23  Payment of Proceeds
24  Payment Options
25  Deferment of Payment

24
C183

# 1  Policy Terms

*Basic Policy* means this policy apart from any Extra Benefit Rider and apart from any dividend additions or other dividend credits.

*Extra Benefit Riders* provide benefits in addition to those of the basic policy for an additional cost.

*Policy Anniversary* means any anniversary of the policy year date.

*Policy Years and Policy Months.* The first policy year and the first policy month start on the policy year date. Later policy years start on policy anniversaries. Later policy months start on the same calendar day of the month as the policy year date or on the last day of any month which has no such calendar day.

*Policy Processing Day.* The first day of each policy month is a policy processing day. The first policy processing day is the policy year date.

*Age.* The age of any person insured during any policy year means the age of that person on the birthday nearest the first day of that policy year.

*Grace Period.* If this policy lapses, it will stay in force during a grace period of 61 days after the lapse date. See Section 13 for further details.

*Net Premium* for each premium paid is that premium less the premium expense charge defined on page 3 or 4.

*Cash Value* on any date is an amount determined according to Section 11.

*Net Cash Value* on any date is the policy's cash value plus the reserve for any dividend additions less any loan balance on that date.

*Cash Surrender Value* is the net cash value less a surrender charge. See Section 17 for further details.

*Loan Balance* is the loan principal plus accrued interest.

*Loan Limit* is the maximum amount that the owner can borrow. See Section 16 for further details.

The tables which appear with Options 3, 4, 5, and 6 show the minimum monthly payment for each option. The amount of each minimum payment to be made during the periods shown below will be computed by multiplying the monthly payment by the factor shown.

| Period | Factor |
|--------|--------|
| 3 months | 2.991 |
| 6 months | 5.957 |
| 12 months | 11.813 |

We may change the frequency of payments so that the payment is at least $50. We will pay in one sum any amount which results in a minimum payment of less than $100 a year.

Unless such rights have been withheld, the beneficiary may, upon request, withdraw the amount held under Option 1 or 2 or have us make a one-sum payment of the present value of the future minimum payments certain under Option 3 or of the future payments certain under Option 4, 5, or 6. To compute the present value under Option 4, 5, or 6, we will use the interest rate which was used to determine the amount of the payments certain. If we receive a request for the one-sum payment within 90 days after the insured dies and before any payment has been made under Option 4, 5, or 6, we will pay the full amount which was placed under such option.

# 25  Deferment of Payment

We may defer any payment due upon request for a loan, for the net cash surrender value, or for a partial withdrawal of the cash surrender value, for a change of policy, or for a one sum payment under a payment option. We may defer payment for the period permitted by law but not for longer than 6 months. We will not defer payment of an amount used to pay premiums to us.

We will not charge or pay interest on a loan for the period for which we defer payment. We will pay interest on the amount of any other payment we defer for more than 30 days at the rate which we then credit on proceeds held under Option 1.

*Option 6 — Joint Life Income (Choice of Period Certain)* • We will use the proceeds to make level payments while either of two beneficiaries is alive. Payments will be made for a requested period certain of 10 or 20 years. Each payment will be made at the beginning of its payment period. The table below shows the minimum monthly payments for each $1,000 placed under Option 6 for two beneficiaries (one male and one female) of the same age. Upon request, we will quote payments for any combination of ages and sexes not shown.

| Age of each beneficiary (1 Male and 1 Female) | MINIMUM MONTHLY PAYMENT | | Age of each beneficiary (1 Male and 1 Female) | MINIMUM MONTHLY PAYMENT | |
|---|---|---|---|---|---|
| | 10 years certain | 20 years certain | | 10 years certain | 20 years certain |
| 40 | $3.57 | $3.57 | 60 | $4.62 | $4.54 |
| 41 | 3.60 | 3.60 | 61 | 4.70 | 4.62 |
| 42 | 3.63 | 3.63 | 62 | 4.80 | 4.69 |
| 43 | 3.67 | 3.66 | 63 | 4.90 | 4.77 |
| 44 | 3.70 | 3.70 | 64 | 5.00 | 4.85 |
| 45 | 3.74 | 3.74 | 65 | 5.12 | 4.92 |
| 46 | 3.78 | 3.77 | 66 | 5.24 | 5.00 |
| 47 | 3.82 | 3.82 | 67 | 5.36 | 5.08 |
| 48 | 3.86 | 3.86 | 68 | 5.50 | 5.16 |
| 49 | 3.91 | 3.90 | 69 | 5.64 | 5.24 |
| 50 | 3.96 | 3.95 | 70 | 5.80 | 5.31 |
| 51 | 4.01 | 4.00 | 71 | 5.96 | 5.38 |
| 52 | 4.06 | 4.05 | 72 | 6.13 | 5.44 |
| 53 | 4.12 | 4.10 | 73 | 6.31 | 5.50 |
| 54 | 4.18 | 4.16 | 74 | 6.50 | 5.55 |
| 55 | 4.24 | 4.21 | 75 | 6.70 | 5.60 |
| 56 | 4.31 | 4.27 | 76 | 6.91 | 5.63 |
| 57 | 4.38 | 4.34 | 77 | 7.13 | 5.66 |
| 58 | 4.45 | 4.40 | 78 | 7.35 | 5.69 |
| 59 | 4.53 | 4.47 | 79 | 7.58 | 5.71 |
| | | | 80 and over | 7.81 | 5.72 |

The amount of the payments under Option 4, 5, or 6 will not be less than the amount shown in the table which applies. If our rates for single premium immediate annuities as of the date of the first payment provide larger payments than those guaranteed in this policy, they will be used as the basis for determining the amount of the payments. The payments will be based on the age at nearest birthday, as of that date, and on the sex of each person on whose life they are based. We will need proof of date of birth before we can make any payment. If an age or sex on which the payments are based is not correct, we will determine the amount of all payments on the correct basis.

22
C183

*Owner.* The owner has all the rights stated in this policy while the insured is alive. The owner is named in the application. The owner may change the ownership as set forth in Section 19.

The *Monthly Deduction* is the amount which we will deduct each month from the cash value. See Section 12 for further details.

*Payment Options* are the different plans which may be used to provide payments over a period of time instead of a one-sum payment. They may be used either for the proceeds or the cash surrender value. See Section 24 for further details.

*Participation.* This policy is eligible for dividends. See Section 15 for further details.

**2  Periodic Report**
At least once each policy year we will send to the owner a report which shows:

(a) the current cash value, all premiums paid and all charges made since the last periodic report;

(b) any dividends that have been paid or credited;

(c) any outstanding policy loans;

(d) the interest rates to be used in calculating the cash value during the next policy year; and

(e) if any premium payment is needed to continue coverage to the next policy anniversary.

**3  Entire Contract**
This policy and the application on which it is based and any supplemental application or application for reinstatement are the entire contract.

We attached a copy of the application to the policy when it was issued. We will attach a copy of any supplemental application or application for reinstatement to the policy when the coverage requested by it begins. We will not use any statement to void the policy or deny a claim unless it is in the application, a supplemental application or an application for reinstatement. Statements in a supplemental application or an application for reinstatement will apply only to the coverage effected as a result of that application. We will treat all statements in an application as representations and not as warranties.

7
C183

To protect all the parties to the policy we may require that all requests which affect it be received at our home office in satisfactory written form.

## 4 Incontestability

Except for nonpayment of premiums, any coverage effective on the issue date of this policy will become incontestable:

(a) one year after its issue date if the insured is then alive; or

(b) if the insured is not then alive, two years after its issue date.

Any insurance coverage which becomes effective after the issue date or at the time of any reinstatement will become incontestable:

(a) one year after its effective date if the insured is then alive; or

(b) if the insured is not then alive, two years after its effective date.

This provision does not apply to any rider which contains its own incontestability provision.

## 5 Termination

Coverage under this policy will terminate when any one of the following events occurs:

(a) The owner requests that coverage terminate.

(b) The insured dies.

(c) The policy matures on the maturity date shown on page 3.

(d) The grace period ends and a premium payment sufficient to cover the overdue monthly deduction has not been received by us.

(e) The policy is surrendered.

## 6 Premiums

The initial premium is due on the policy year date and is shown on page 3.

Each premium is payable at our home office or to our agent in exchange for a receipt.

The amount of the annual planned premium is shown on page 3. Premium payment reminder notices will be sent to the owner.

Upon request, the owner may change the amount and frequency of the planned premium.

| Age of beneficiary | | MINIMUM MONTHLY PAYMENT | | | | |
|---|---|---|---|---|---|---|
| | | | Option 5 | | | |
| Male | Female | Option 4 | No Years certain | 5 years certain | 10 years certain | 20 years certain |
| 15 | 20 | $3.27 | $3.28 | $3.28 | $3.28 | $3.27 |
| 20 | 25 | 3.35 | 3.37 | 3.37 | 3.37 | 3.36 |
| 25 | 30 | 3.46 | 3.47 | 3.47 | 3.47 | 3.46 |
| 30 | 35 | 3.58 | 3.61 | 3.61 | 3.61 | 3.60 |
| 31 | 36 | 3.61 | 3.64 | 3.64 | 3.64 | 3.62 |
| 32 | 37 | 3.65 | 3.68 | 3.68 | 3.68 | 3.66 |
| 33 | 38 | 3.68 | 3.71 | 3.71 | 3.71 | 3.69 |
| 34 | 39 | 3.71 | 3.75 | 3.75 | 3.74 | 3.72 |
| 35 | 40 | 3.74 | 3.79 | 3.79 | 3.78 | 3.75 |
| 36 | 41 | 3.77 | 3.83 | 3.83 | 3.82 | 3.79 |
| 37 | 42 | 3.82 | 3.87 | 3.87 | 3.86 | 3.83 |
| 38 | 43 | 3.85 | 3.92 | 3.91 | 3.91 | 3.87 |
| 39 | 44 | 3.89 | 3.96 | 3.96 | 3.95 | 3.91 |
| 40 | 45 | 3.93 | 4.01 | 4.01 | 4.00 | 3.95 |
| 41 | 46 | 3.98 | 4.07 | 4.06 | 4.05 | 3.99 |
| 42 | 47 | 4.03 | 4.12 | 4.12 | 4.10 | 4.04 |
| 43 | 48 | 4.07 | 4.18 | 4.17 | 4.16 | 4.08 |
| 44 | 49 | 4.12 | 4.24 | 4.23 | 4.22 | 4.13 |
| 45 | 50 | 4.18 | 4.30 | 4.30 | 4.28 | 4.18 |
| 46 | 51 | 4.23 | 4.37 | 4.36 | 4.34 | 4.23 |
| 47 | 52 | 4.28 | 4.44 | 4.43 | 4.41 | 4.28 |
| 48 | 53 | 4.34 | 4.52 | 4.51 | 4.48 | 4.34 |
| 49 | 54 | 4.41 | 4.60 | 4.58 | 4.55 | 4.39 |
| 50 | 55 | 4.47 | 4.68 | 4.66 | 4.62 | 4.45 |
| 51 | 56 | 4.54 | 4.76 | 4.75 | 4.70 | 4.51 |
| 52 | 57 | 4.60 | 4.86 | 4.84 | 4.79 | 4.57 |
| 53 | 58 | 4.69 | 4.95 | 4.93 | 4.87 | 4.63 |
| 54 | 59 | 4.76 | 5.05 | 5.03 | 4.96 | 4.70 |
| 55 | 60 | 4.83 | 5.16 | 5.13 | 5.06 | 4.76 |
| 56 | 61 | 4.95 | 5.27 | 5.24 | 5.16 | 4.83 |
| 57 | 62 | 5.03 | 5.39 | 5.36 | 5.26 | 4.89 |
| 58 | 63 | 5.11 | 5.52 | 5.48 | 5.37 | 4.96 |
| 59 | 64 | 5.24 | 5.66 | 5.61 | 5.49 | 5.02 |
| 60 | 65 | 5.33 | 5.80 | 5.75 | 5.61 | 5.09 |
| 61 | 66 | 5.42 | 5.96 | 5.90 | 5.74 | 5.15 |
| 62 | 67 | 5.59 | 6.12 | 6.06 | 5.88 | 5.22 |
| 63 | 68 | 5.69 | 6.30 | 6.23 | 6.02 | 5.28 |
| 64 | 69 | 5.79 | 6.49 | 6.41 | 6.17 | 5.34 |
| 65 | 70 | 5.99 | 6.69 | 6.60 | 6.32 | 5.39 |
| 66 | 71 | 6.11 | 6.91 | 6.80 | 6.48 | 5.45 |
| 67 | 72 | 6.23 | 7.15 | 7.02 | 6.65 | 5.50 |
| 68 | 73 | 6.47 | 7.41 | 7.26 | 6.83 | 5.54 |
| 69 | 74 | 6.60 | 7.68 | 7.51 | 7.01 | 5.58 |
| 70 | 75 | 6.74 | 7.98 | 7.77 | 7.19 | 5.62 |
| 71 | 76 | 7.04 | 8.30 | 8.06 | 7.38 | 5.65 |
| 72 | 77 | 7.19 | 8.65 | 8.36 | 7.58 | 5.68 |
| 73 | 78 | 7.33 | 9.03 | 8.68 | 7.77 | 5.70 |
| 74 | 79 | 7.72 | 9.44 | 9.02 | 7.97 | 5.71 |
| 75 | 80 and over | 7.88 | 9.89 | 9.38 | 8.16 | 5.73 |
| 76 | | 8.35 | 10.38 | 9.77 | 8.35 | 5.74 |
| 77 | | 8.54 | 10.91 | 10.17 | 8.54 | 5.74 |
| 78 | | 8.72 | 11.48 | 10.59 | 8.72 | 5.75 |
| 79 | | 9.32 | 12.11 | 11.04 | 8.89 | 5.75 |
| 80 and over | | 9.53 | 12.80 | 11.50 | 9.05 | 5.75 |

We will place the proceeds under Option 1, 2, 3, 4, or 5 as described in Section 24 upon request by a beneficiary who is a natural person and who is to receive proceeds in one sum in his or her own behalf:

(a) at the death of the insured before the maturity date; or

(b) on the maturity date if the insured is then alive.

Such beneficiary may, if we receive the request before his or her death, name and change the contingent beneficiary who will receive any payment due at such death. In the same manner, two such beneficiaries may elect Option 6, and they or the survivor of them may name and change the contingent beneficiary who will receive any payment due at the death of the survivor.

Payment to the contingent beneficiary will be made in one sum or as agreed with us. If the proceeds have been placed under Option 1 or 2, the amount of any one-sum payment will be the amount then held under Option 1 or 2. If the proceeds have been placed under Option 3, 4, 5 or 6, the amount of any one-sum payment will be the present value of the future minimum payments certain under Option 3, or of the future payments certain under Option 4, 5 or 6.

A natural person who is to receive surrender proceeds in his or her own behalf upon surrender at or after the end of the 5th policy year will have the same rights as those described in this section for a beneficiary.

If a corporation, partnership, or other business entity is the beneficiary at the death of the insured or the maturity date, or is the owner when the policy is surrendered, it may:

(a) substitute one or more of the insured, the insured's spouse, and the insured's children to receive the amount then payable;

(b) choose to receive payments under a payment option based on the life of the insured, if living; if not, on the life of the spouse of the insured, if living; if not, on the life of a child of the insured; or

18
C183

the minimum specified amount for which we will issue a new policy at the time of the decrease.

If there have been increases in the specified amount, the decrease will first be applied against such increases in the reverse order of their effective dates.

The decrease will be effective on the policy processing day next following the date the request is received by us.

Subject to a minimum amount determined by us, the basic amount may be changed to any amount which is not greater than the excess, if any, of:

(1) the specified amount; over

(2) the cash value on the effective date of the change.

The change will be effective on the policy processing day next following the date the request is received by us.

**11  Cash Value**
A statement of the method of calculation of values has been filed with the insurance official in the jurisdiction in which this policy is delivered. Policy values and benefits are equal to or greater than those required by law on the policy year date.

On the policy year date, the cash value is the net first premium less the monthly deduction for the first policy month.

On a policy processing day after the policy year date, the cash value is:

(a) the cash value on the prior policy processing day less the amount of any withdrawal of part of the cash surrender value during the prior policy month; plus

(b) interest earned during the prior policy month on (a); plus

(c) all net premiums for premiums received since the prior policy processing day; plus

(d) any dividends credited since the prior policy processing day; less

(e) the monthly deduction for the current policy month.

11
C183

On any day other than a policy processing day, the cash value is:

*(f)* the cash value on the prior policy processing day less the amount of any withdrawal of part of the cash surrender value during the current policy month; plus

*(g)* interest earned during the current policy month on (f); plus

*(h)* all net premiums for premiums received since the prior policy processing day.

The cash value interest rates we use to calculate the interest on the cash value are shown on page 3 or 4. If there is an outstanding policy loan, an interest rate equivalent to the policy loan interest rate less 2% per year will be substituted for the current interest rate to calculate the interest earned on that portion of the cash value which is equal to the loan principal. The current interest rate for policy years after the first year will be shown in the periodic report. Every interest rate used will be no less than the guaranteed minimum rate.

## 12 Monthly Deduction and Cost of Insurance

The monthly deduction for each policy month is the sum of:

*(a)* the cost of insurance (see next paragraph) for the basic policy for the policy month; plus

*(b)* the cost of insurance for all extra benefit riders for the policy month; plus

*(c)* for each of the first 12 policy months, the monthly expense charge shown on page 3 or 4; plus

*(d)* for the first policy month following the effective date of an increase in the specified amount or a reinstatement, a charge we will determine based on the attained age of the insured.

The cost of insurance for the basic policy for a policy month is the sum on its policy processing day of:

*(e)* the product of:

   *(1)* the death benefit on that date discounted for interest for one month, less the cash value on that date before deduction of the cost of insurance; times

   *(2)* the monthly cost of insurance rate on that date; and

12
C183

of them is alive when the insured dies, we will, unless it is otherwise provided in the last beneficiary request, pay the proceeds to the owner, or if the owner is the insured, to his or her estate.

## 21 Exchange of Policy

Upon request by the owner, we will cancel this policy and issue in exchange for it a new basic policy under our practices at the time of the exchange.

The new basic policy will be for a face amount equal to the specified amount of this policy and will be the same as if it had been issued originally instead of this policy. We will not change the amount of any dividend additions.

A payment will be made to us or by us. We will compute the payment under our practices at the time of the exchange.

If the exchange requires a payment to us it must be made at the time of the exchange. If the exchange requires a payment by us, we will require evidence of insurability satisfactory to us. We will first use the amount of any payment by us to pay any excess of the loan balance over the loan limit. We will pay the rest in cash.

We will add to the new basic policy any rider which is a part of this policy if that is allowed under the terms of the rider.

## 22 Change in Maturity Date

At any time before the maturity date shown on page 3, the owner may change the maturity date to the 10th or any later anniversary of the policy date which is prior to that maturity date.

## 23 Payment of Proceeds

We will pay interest on any policy proceeds paid in one sum at the rate which we then pay on proceeds held under Option 1 or at such higher rate as may be required by law. The interest will accrue from the date of death of the insured to the date of payment.

17
C183

mitted which reduces the specified amount to an amount less than the minimum specified amount for which we will issue a new policy on the date of withdrawal. If the specified amount has been increased after the policy year date, the reduction will be applied to the amount of such increases in the reverse order of their effective dates.

The withdrawal amount must be at least $500 but less than the net cash value of this policy on the next policy anniversary assuming no premium payments are received by us between the withdrawal date and such policy anniversary.

**19** **Ownership**
Upon written request in a form satisfactory to us, the owner may change ownership, contingent ownership, or both, without the consent of any beneficiary or contingent owner. We must receive any such request before the death of the insured. This policy must be sent to us with the request so that we can make the change a part of the policy.

The rights of the owner, any contingent owner, and any beneficiary will be subject to the rights of any assignee of this policy. No assignment will affect us until we receive a copy of it at our home office. We will not be responsible for the validity or effect of any assignment. We will pay an assignee in one sum only.

**20** **Beneficiary**
Upon request, the owner may change the beneficiary. The owner may also request that all or part of the proceeds be placed under a payment option for a beneficiary who is a natural person and who is to receive payment in his or her own behalf.

We must receive any such request before the death of the insured. When we approve the request, any prior designation of beneficiary and any prior agreement to place the proceeds under a payment option will cease to be in effect.

If all beneficiaries are natural persons who are to receive payments in their own behalf and none

*16*
C183

*(f)* the flat extra monthly charge shown on page 3 or 4, if any.

The interest rate we will use to discount the death benefit is the guaranteed minimum cash value interest rate shown on page 3 or 4.

The monthly cost of insurance rate is based on the sex, age, and rate class of the insured. Monthly cost of insurance rates will be determined by us from time to time based on our expectations of future mortality experience. Such cost of insurance rates will not be greater than those shown in the table of maximum monthly cost of insurance rates on page 27.

The cost of insurance for an extra benefit rider on a policy processing day is the cost of insurance defined in such rider.

**13** **Lapse**
If the net cash value of this policy on a policy processing day is less than the monthly deduction for the following month, this policy will lapse on that policy processing day. Notice of the lapse will be mailed to the last known address of the owner.

If we do not receive a premium payment sufficient to cover the monthly deduction by the end of the grace period, all policy rights and benefits will cease at the end of the grace period.

**14** **Reinstatement**
We will reinstate this policy if it has not been surrendered when we receive:

*(a)* a request from the owner within three years of the date of lapse and before the maturity date while the insured is alive;

*(b)* payment of the cost to reinstate; and

*(c)* if required, evidence of insurability satisfactory to us.

The cost to reinstate is a premium large enough to keep this policy in force for at least twelve months following the date of reinstatement.

The reinstated policy will be in force from the policy processing day following the date the application for reinstatement is approved by us.

*13*
C183

We will not require evidence of insurability to reinstate this policy within one month after the end of the grace period if all persons insured are alive. In all other cases, we will require evidence of insurability satisfactory to us.

## 15 Dividends

We will credit this policy at the end of each policy year with such dividends as we may apportion.

The owner may choose to have dividends paid in cash or under one of the other plans below. The plan will apply only to dividends credited after we receive the request for the plan. The plan will be in effect until the owner chooses another plan. We will use the Credit to Cash Value Plan if the owner does not request one of the other plans.

*Credit to Cash Value Plan* • We will add the dividends to the cash value.

*Addition Plan* • We will use dividends to buy additional paid-up insurance at net single premium rates based on the sex, age during the next policy year, and rate class shown in the table on page 27. These dividend additions will be eligible for dividends.

Upon request by the owner, we will cancel any dividend additions and pay the reserve for them. The reserve will be paid in cash unless the loan balance exceeds the loan limit, in which case we will:

(a) use the reserve to reduce the loan balance to the loan limit; and

(b) pay the rest, if any, in cash.

Reserves and net single premiums for any dividend additions are based on the mortality and interest rates stated in the table on page 27.

## 16 Loans

Upon request, the owner may obtain a loan on the sole security of this policy. On any date the owner cannot borrow more than the loan limit less any existing loan principal.

Interest on the loan principal will accrue daily at the effective annual policy loan interest rate defined on page 3 or 4. Interest will be due at the end of each policy year. Interest not paid within 31 days after the due date will be added to and become a part of the loan principal as of the due date.

The loan limit is the amount which, with loan interest to the next interest due date, is equal to the sum of:

(a) the policy's cash value computed as of the next policy anniversary assuming no additional premium payments are received by us before such anniversary; and

(b) the reserve for any dividend additions as of the next policy anniversary.

All or part of the loan balance may be repaid at any time while the insured is alive.

## 17 Surrender for Cash

At any time before the death of the insured the owner may surrender this policy for its cash surrender value by sending the policy and a request to our home office. The date of surrender is the date on which we receive them at our home office. All rights and benefits will cease on that date.

If this policy is surrendered during the first policy year, the surrender charge will be the sum of the monthly expense charge deductions that would have been made for the remainder of that policy year.

## 18 Withdrawal of Part of Cash Surrender Value

At any time before the maturity date while the insured is alive but not more frequently than twice in any policy year, the owner may withdraw part of the cash surrender value of this policy by sending the policy and a written request to our home office. The date of withdrawal is the date they are received by us. The withdrawal amount less a service charge not greater than $50 will be paid in one sum to the owner.

The specified amount and the cash value of this policy will be reduced on the date of withdrawal by the withdrawal amount. No withdrawal will be per-

Maximum Monthly Cost of Insurance Rates and Net Single Premiums, Per $1,000, Based on the 1958 Commissioners Standard Ordinary Mortality Table and Interest of 4½% Per Year.

| | | | | | |
|---|---|---|---|---|---|
| **MALE INSURED-STANDARD ISSUE** | | | | | |
| Age | Cost of Insurance Rates | Net Single Premiums | Age | Cost of Insurance Rates | Net Single Premiums |
| 0 | $.59 | $ 79.98 | 50 | $ .69 | $394.24 |
| 1 | .15 | 76.89 | 51 | .76 | 406.86 |
| 2 | .13 | 78.69 | 52 | .83 | 419.68 |
| 3 | .12 | 80.80 | 53 | .91 | 432.69 |
| 4 | .12 | 83.06 | 54 | .99 | 445.89 |
| 5 | .11 | 85.49 | 55 | 1.08 | 459.25 |
| 6 | .11 | 88.07 | 56 | 1.19 | 472.78 |
| 7 | .11 | 90.83 | 57 | 1.30 | 486.44 |
| 8 | .10 | 93.74 | 58 | 1.42 | 500.22 |
| 9 | .10 | 96.82 | 59 | 1.55 | 514.09 |
| 10 | .10 | 100.07 | 60 | 1.70 | 528.03 |
| 11 | .10 | 103.46 | 61 | 1.86 | 542.03 |
| 12 | .11 | 106.99 | 62 | 2.03 | 556.05 |
| 13 | .11 | 110.65 | 63 | 2.22 | 570.08 |
| 14 | .12 | 114.43 | 64 | 2.43 | 584.09 |
| 15 | .12 | 118.33 | 65 | 2.65 | 598.06 |
| 16 | .13 | 122.34 | 66 | 2.90 | 611.94 |
| 17 | .14 | 126.46 | 67 | 3.18 | 625.70 |
| 18 | .14 | 130.71 | 68 | 3.49 | 639.29 |
| 19 | .15 | 135.09 | 69 | 3.82 | 652.66 |
| 20 | .15 | 139.64 | 70 | 4.17 | 665.77 |
| 21 | .15 | 144.35 | 71 | 4.53 | 678.62 |
| 22 | .16 | 149.25 | 72 | 4.91 | 691.23 |
| 23 | .16 | 154.35 | 73 | 5.30 | 703.65 |
| 24 | .16 | 159.66 | 74 | 5.71 | 715.93 |
| 25 | .16 | 165.21 | 75 | 6.15 | 728.12 |
| 26 | .16 | 171.00 | 76 | 6.64 | 740.19 |
| 27 | .17 | 177.04 | 77 | 7.19 | 752.10 |
| 28 | .17 | 183.34 | 78 | 7.82 | 763.80 |
| 29 | .17 | 189.90 | 79 | 8.50 | 775.18 |
| 30 | .18 | 196.73 | 80 | 9.25 | 786.17 |
| 31 | .18 | 203.84 | 81 | 10.05 | 796.75 |
| 32 | .19 | 211.23 | 82 | 10.88 | 806.90 |
| 33 | .19 | 218.93 | 83 | 11.75 | 816.65 |
| 34 | .20 | 226.94 | 84 | 12.66 | 826.05 |
| 35 | .21 | 235.26 | 85 | 13.61 | 835.16 |
| 36 | .22 | 243.90 | 86 | 14.61 | 844.02 |
| 37 | .23 | 252.84 | 87 | 15.67 | 852.70 |
| 38 | .25 | 262.09 | 88 | 16.80 | 861.27 |
| 39 | .27 | 271.62 | 89 | 18.02 | 869.80 |
| 40 | .29 | 281.44 | 90 | 19.38 | 878.38 |
| 41 | .32 | 291.52 | 91 | 20.91 | 887.06 |
| 42 | .35 | 301.88 | 92 | 22.66 | 895.94 |
| 43 | .38 | 312.50 | 93 | 24.70 | 905.10 |
| 44 | .41 | 323.40 | 94 | 27.10 | 914.69 |
| 45 | .45 | 334.57 | 95 | | 925.11 |
| 46 | .49 | 346.01 | | | |
| 47 | .53 | 357.70 | | | |
| 48 | .58 | 369.65 | | | |
| 49 | .63 | 381.83 | | | |

If this policy was issued in a rated class, the cost of insurance rates shall be multiplied by the basic policy rated class factor shown on page 3.