UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY BROOKS and JOAN SILVERMAN,

                    :

                  Plaintiffs,          Civil Action

                    :      No. 05-10994-WGY

      v.

                    :

AIG SUNAMERICA LIFE ASSURANCE
COMPANY,                    :

                Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT AIG SUNAMERICA'S
## ANSWER AND AFFIRMATIVE DEFENSES

      Defendant AIG SunAmerica Life Assurance Company ("AIG SunAmerica"), by

its undersigned counsel, answer the Complaint upon knowledge as to itself and otherwise upon

information and belief as follows:

      1.     The allegations in paragraph 1 of the Complaint constitute legal

conclusions to which no answer is required.  To the extent that paragraph 1 of the Complaint

may be deemed to contain factual allegations, they are denied.

      2.     AIG SunAmerica is without knowledge or information sufficient to form a

belief as to the truth of the allegations in the first and second sentences of paragraph 2 of the

Complaint, except admit that Policy Number AL101958 was issued to Donald L. Silverman on

May 1, 1984.  AIG SunAmerica denies the allegations in the third sentence of paragraph 2 of the

Complaint, except admit that in June of 2001, the Irrevocable Trust of Donald L. Silverman was

the owner of Policy Number AL101958.

      3.     AIG SunAmerica admits the allegations in paragraph 3 of the Complaint.

4.      The allegations in paragraph 4 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 4 of the Complaint may be deemed to contain factual allegations, they are denied.

5.      The allegations in paragraph 5 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 5 of the Complaint may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading between paragraphs 5 and 6 of the Complaint.

6.      The allegations in paragraph 6 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 6 of the Complaint may be deemed to contain factual allegations, they are denied.

7.      The allegations in paragraph 7 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 7 of the Complaint may be deemed to contain factual allegations, they are denied.

8.      The allegations in paragraph 8 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 8 of the Complaint may be deemed to contain factual allegations, they are denied.

9.      The allegations in paragraph 9 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 9 of the Complaint may be deemed to contain factual allegations, they are denied.

10.      The allegations in paragraph 10 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 10 of the Complaint may be deemed to contain factual allegations, they are denied.

11.    The allegations in paragraph 11 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 11 of the Complaint may be deemed to contain factual allegations, they are denied.

12.    The allegations in paragraph 12 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 12 of the Complaint may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading between paragraphs 12 and 13 of the Complaint.

13.    AIG SunAmerica is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.    AIG SunAmerica denies the allegations in paragraph 14 of the Complaint, except admits that on July 16, 1991, Mutual Benefit Life Insurance Company was placed into rehabilitation.

15.    AIG SunAmerica denies the allegations in paragraph 15 of the Complaint, except admits that the New Jersey Superior Court approved the plan of rehabilitation ("Rehabilitation Plan") and refers to the Rehabilitation Plan for a complete and accurate statement of its contents.

16.    AIG SunAmerica denies the allegations in paragraph 16 of the Complaint as materially incomplete, and refers to the Rehabilitation Plan for a complete and accurate statement of its contents.

17.    AIG SunAmerica denies the allegations in the first sentence of paragraph 17 of the Complaint as materially incomplete, and refers to the Purchase and Sale Agreement between MBL Life Assurance Corporation and Anchor National Life Assurance Company dated

July 15, 1998 for a complete and accurate statement of its contents. AIG SunAmerica denies the

allegations in the second sentence of paragraph 17 of the Complaint, and refers to the

Rehabilitation Plan for a complete and accurate statement of its contents. AIG SunAmerica

admits the allegations in the third sentence of paragraph 17 of the Complaint. The allegations in

the fourth sentence of paragraph 17 of the Complaint constitute plaintiffs' definitional

characterizations to which no answer is required. To the extent that the fourth sentence of

paragraph 17 of the Complaint may be deemed to contain factual allegations, they are denied.

18.    AIG SunAmerica denies the allegations in paragraph 18 of the Complaint,

and further aver that the cost of insurance increases identified in paragraph 18 of the Complaint

apply to the policy issued to Donald L. Silverman, Policy Number AL101958 (the "Policy")

(attached hereto as Exhibit A).

19.    AIG SunAmerica denies the allegations in paragraph 19 of the Complaint

as materially incomplete, and refers to the Policy for a complete and accurate statement of its

contents.

20.    AIG SunAmerica denies the allegations in paragraph 20 of the Complaint.

21.    The allegations in paragraph 21 of the Complaint constitute legal

conclusions to which no answer is required. To the extent that paragraph 21 of the Complaint

may be deemed to contain factual allegations, they are denied.

22.    The allegations in paragraph 22 of the Complaint constitute legal

conclusions to which no answer is required. To the extent that paragraph 22 of the Complaint

may be deemed to contain factual allegations, they are denied.

23.    The allegations in paragraph 23 of the Complaint constitute legal

conclusions to which no answer is required. To the extent that paragraph 23 of the Complaint

may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading between paragraphs 23 and 24 of the Complaint.

24.     AIG SunAmerica repeats and realleges its answers to all preceding and subsequent paragraphs as if fully set forth herein.

25.     The allegations in paragraph 25 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 25 of the Complaint may be deemed to contain factual allegations, they are denied.

26.     The allegations in paragraph 26 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 26 of the Complaint may be deemed to contain factual allegations, they are denied.

27.     The allegations in paragraph 27 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 27 of the Complaint may be deemed to contain factual allegations, they are denied.

28.     The allegations in paragraph 28 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 28 of the Complaint may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading between paragraphs 28 and 29 of the Complaint.

29.     The allegations in paragraph 29 of the Complaint relate solely to a cause of action that was dismissed by order of this Court dated October 5, 2005, and therefore no response is required.  To the extent that an answer is deemed required, AIG SunAmerica repeats and realleges its answers to all preceding and subsequent paragraphs as if fully set forth herein.

30.     The allegations in paragraph 30 of the Complaint relate solely to a cause of action that was dismissed by order of this Court dated October 5, 2005, and therefore no response is required.  To the extent that an answer is deemed required, AIG SunAmerica denies the allegations in paragraph 30 of the Complaint.

31.     The allegations in paragraph 31 of the Complaint relate solely to a cause of action that was dismissed by order of this Court dated October 5, 2005, and therefore no response is required.  To the extent that an answer is deemed required, AIG SunAmerica denies the allegations in paragraph 31 of the Complaint.

AIG SunAmerica denies the heading between paragraphs 31 and 32 of the Complaint.

32.     AIG SunAmerica repeats and realleges its answers to all preceding and subsequent paragraphs as if fully set forth herein.

33.     The allegations in paragraph 33 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 33 of the Complaint may be deemed to contain factual allegations, they are denied.

34.     The allegations in paragraph 34 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 34 of the Complaint may be deemed to contain factual allegations, they are denied.

35.     The allegations in paragraph 35 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 35 of the Complaint may be deemed to contain factual allegations, they are denied.

36.     The allegations in paragraph 36 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 36 of the Complaint

may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading between paragraphs 36 and 37 of the Complaint.

37.    AIG SunAmerica repeats and realleges its answers to all preceding and subsequent paragraphs as if fully set forth herein.

38.    The allegations in paragraph 38 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 38 of the Complaint may be deemed to contain factual allegations, they are denied.

39.    AIG SunAmerica denies the allegations in paragraph 39 of the Complaint.

40.    The allegations in paragraph 40 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 40 of the Complaint may be deemed to contain factual allegations, they are denied.

41.    The allegations in paragraph 41 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 41 of the Complaint may be deemed to contain factual allegations, they are denied.

42.    The allegations in paragraph 42 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 42 of the Complaint may be deemed to contain factual allegations, they are denied.

43.    The allegations in paragraph 43 of the Complaint constitute legal conclusions to which no answer is required.  To the extent that paragraph 43 of the Complaint may be deemed to contain factual allegations, they are denied.

AIG SunAmerica denies the heading and the WHEREFORE paragraph following paragraph 43.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.      This action is barred because the Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.      This action is barred, in whole or in part, by the applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

3.      This action is barred because plaintiffs have not suffered any damages due to any conduct by AIG SunAmerica.

### FOURTH AFFIRMATIVE DEFENSE

4.      To the extent plaintiffs failed to mitigate, minimize or avoid any damages, any recovery must be reduced in whole or in part.

### FIFTH AFFIRMATIVE DEFENSE

5.      This action is barred by the doctrines of estoppel, waiver and laches.

### SIXTH AFFIRMATIVE DEFENSE

6.      This action is barred because AIG SunAmerica acted in good faith at all relevant times hereto.

### SEVENTH AFFIRMATIVE DEFENSE

7.      All or some of plaintiffs' claims are barred by the Statute of Frauds.

### EIGHTH AFFIRMATIVE DEFENSE

8.      All or some of plaintiffs' claims are barred by the parole evidence rule.

### NINTH AFFIRMATIVE DEFENSE

9.      All or some of plaintiffs' claims fail for lack of consideration.

## TENTH AFFIRMATIVE DEFENSE

10.     All or some of plaintiffs' claims are barred because AIG SunAmerica satisfied all of its contractual obligations to plaintiffs, if any.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     All or some of plaintiffs' claims are barred because AIG SunAmerica did not raise monthly cost of insurance rates in violation of any procedures or standards.

## TWELFTH AFFIRMATIVE DEFENSE

12.     All or some of plaintiffs' claims are barred because plaintiffs' allegations of fraudulent concealment are not alleged with the requisite particularity.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     All or some of plaintiffs' claims are barred because plaintiff has failed to identify an unlawful or unfair act or practice.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     AIG SunAmerica hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserve all rights to amend this Answer and all such defenses.

WHEREFORE, AIG SunAmerica respectfully requests that this Court:

(a)     Grant AIG SunAmerica judgment on all of plaintiffs' claims and dismiss the Complaint with prejudice;

(b)     Award AIG SunAmerica its costs and attorneys' fees for the defense of this action; and

(c)     Award AIG SunAmerica such other further relief as the Court deems just and proper.

Dated:  October 25, 2005
        Boston, Massachusetts

Respectfully submitted,

 /s/  James R. Carroll
James R. Carroll (BBO #554426)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
AIG SunAmerica Life Assurance Company

## CERTIFICATE OF SERVICE

      I, Michael S. Hines, hereby certify that on October 25, 2005, I caused a true copy of the foregoing Defendant AIG SunAmerica's Answer And Affirmative Defenses to be served electronically via the Court's Electronic Filing System upon counsel for plaintiffs, John Peter Zavez.

Dated: October 25, 2005

    /s/  Michael S. Hines
Michael S. Hines

# EXHIBIT A



# Mutual Benefit Life

Insured:                         **Donald L Silverman**

Policy Number:                   **AL101958**

For the payment of premiums, we, **The Mutual Benefit Life Insurance Company in Rehabilitation**, insure the life of the Insured named on page 3.

The proceeds of this policy are payable to the beneficiary at the death of the insured before the maturity date. We will pay the proceeds when we receive due proof of the death of the insured. The cash surrender value of this policy is payable to the owner if the insured is living on the maturity date.

## TEN DAY RIGHT TO EXAMINE POLICY

Within 10 days after first receiving this policy, the owner may return it to our home office or to any of our agents. We will then cancel it from the start and refund any premium paid.

_Signature_                      _Signature_

**Chief Executive Officer**                      **Secretary**

Flexible Premium Adjustable Life Policy
Adjustable Death Benefit
Flexible Premium Payments
Cash Surrender Value Payable on the Maturity Date
Nonparticipating – No Dividends

The Mutual Benefit Life Insurance Company in Rehabilitation
520 Broad Street, Newark, New Jersey 07102-318

C193                                  1

**READ YOUR POLICY CAREFULLY**

This policy is a legal contract between the Policyowner and The Mutual Benefit Life Insurance Company in Rehabilitation (hereinafter referred to as "MBL").

| Policy Number | AL101958 |
| Specified Amount | $850,000.00    (effective as of April 29, 1999) |
| Death Benefit | Option A |
| Insured | DONALD L SILVERMAN |
| Issue Date | May 1, 1984 |
| Policy Year Date | May 1, 1984 |

MATURITY DATE:  May 1, 2012; the latest date to which to coverage may be provided by this policy, except as provided in Section 9.  Policy may terminate before maturity date if actual premium payments do not cover the monthly deductions.

PREMIUMS
Planned premium of $41,658.50 payable annually to maturity date.

EXTRA BENEFIT RIDER (S):    This policy does not includ any includes additional benefits added by extra benefit rider (s):

POLICY DATA
Maximum premium expense charge:  7.5% of all premiums paid.
Policy loan interest rate: 8% effective annual rate.
Guaranteed minimum cash value interest rate:  0.327374% per month; 4% effective annual rate.
Maximum monthly expense charge: $4.00 per month.
Service charge for withdrawal of part of the cash surrender value: $25.00.

C193

3

C193

4

# A GUIDE

**To the Sections of this Policy**

Section

| | |
|---|---|
| 1 | Policy Terms |
| 2 | Periodic Report |
| 3 | Entire Contract |
| 4 | Incontestability |
| 5 | Termination |
| 6 | Premiums |
| 7 | Suicide Exclusion |
| 8 | Amount of Proceeds |
| 9 | Continuation of Insurance |
| 10 | Misstatement of Age or Sex |
| 11 | Changes in Specified Amount |
| 12 | Change in Death Benefit Option |
| 13 | Cash Value |
| 14 | Monthly Deduction and Cost of Insurance |
| 15 | Lapse |
| 16 | Reinstatement |
| 17 | Loans |
| 18 | Surrender for Cash |
| 19 | Withdrawal of Part of the Cash Surrender Value |
| 20 | Ownership |
| 21 | Beneficiary |
| 22 | Payment of Proceeds |
| 23 | Payment Options |
| 24 | Deferment of Payment |

# 1 Policy Terms

*Basic Policy* means this policy, apart from any Extra Benefit Rider.

*Extra Benefit Riders* provide benefits in addition to those of the basic policy for an additional cost.

*Policy Anniversary* means any anniversary of the policy year date.

*Policy Years and Policy Months.* The first policy year and the first policy month start on the policy year date. Later policy years start on policy anniversaries. Later policy months start on the same calendar day of the month as the policy year date or on the last day of any month which has no such calendar day.

*Policy Processing Day.* The first day of each policy month is a policy processing day. The first policy processing day is the policy year date.

*Age.* The age of any person insured during any policy year means the age of that person on the birthday nearest the first day of that year.

*Grace Period.* If this policy lapses, it will stay in force during a grace period of 61 days after the lapse date. See Section 15 for further details.

*Net Premium* for each premium paid is that premium less the premium expense charge. The premium expense charge will be determined by us, based on changes in future levels of expenses, including taxes. The maximum premium expense charge is shown on page 3 or 4.

*Cash Value* on any date is an amount determined according to Section 13.

*Net Amount At Risk* on any date is the death benefit on that date discounted for interest for one month, less the cash value on that date. The interest rate we will use to discount the death benefit is the guaranteed minimum cash value interest rate shown on page 3 or 4.

*Cash Surrender Value* is the cash value less any loan balance on that date. See Section 19 for further details.

*Loan Balance* is the loan principal plus accrued interest.

*Loan Limit* is the maximum amount that the owner can borrow. See Section 17 for further details.

*Owner.* The owner has all the rights stated in this policy while the insured is alive. The owner is named in the application. The owner may change the ownership as set forth in Section 20.

The *Monthly Deduction* is the amount which we will deduct each month from the cash value. See Section 14 for further details.

*Payment Options* are the different plans which may be used to provide payments over a period of time instead of a one-sum payment. They may be used either for the proceeds or the cash surrender value. See Section 23 for further details.

*Nonparticipating.* This policy is not eligible for dividends or company profits. Any changes to premiums or expense charges will be determined prospectively. We will not recoup prior losses by means of changes to premiums or expense charges.

# 2 Periodic Report

At least once each policy year we will send to the owner a report which shows:

(a) the current cash value, cash surrender value, all premiums paid and all charges made since the last periodic report;

(b) any outstanding policy loans; and

(c) any other information required by the Insurance Department of the jurisdiction in which this policy is delivered.

Additional illustrative reports will be sent upon request.

# 3 Entire Contract

This policy, the policy specifications, any extra benefit riders and the application, (and any supplements thereto) or application for reinstatement, on which coverage is based are the entire contract.

The policy specifications issued with the policy are the initial specifications which are in effect on the issue date. Some of these specifications may change by an action you request or by a change you make. Any of these changes will be reflected in a new policy specifications statement or a written notice which supplements the policy specifications statement and shows the effective date of the change.

We attached a copy of the application to the policy when it was issued. A copy of any supplemental application, application for reinstatement, new policy specifications statement or written notice which supplements the policy specifications statement will be forwarded to you and become part of this policy when the coverage requested by it begins. We will not use any statement to void the policy or deny a claim unless it is in the application, a supplemental application or an application for reinstatement. Statements in a supplemental application or an application for reinstatement will apply only to the coverage effected as a result of that application. We will treat all statements in an application as representations and not as warranties.

MAL 99078 ai-422 855

To protect all the parties to the policy we may require that all requests which affect it be received at our home office in satisfactory written form.

**4 Incontestability**

Any coverage effective on the issue date of this policy will become incontestable after it has been in force during the life of the insured for two years after the issue date.

Any insurance coverage which becomes effective after the issue date or at the time of any reinstatement will become incontestable after it has been in force during the life of the insured for two years after its effective date.

This provision does not apply to any rider which contains its own incontestability provision.

**5 Termination**

Coverage under this policy will terminate when any one of the following events occurs:

(a) The owner requests that coverage terminate.

(b) The insured dies.

(c) The policy matures on the maturity date shown on page 3, except as provided in Section 9.

(d) The grace period ends and a premium payment sufficient to cover all overdue monthly deductions has not been paid.

(e) The policy is surrendered as provided in Section 18.

**6 Premiums**

The amount and frequency of the planned premium are shown on page 3. Premium payment reminder notices will be sent to the owner.

Each premium is payable at our home office or to our agent in exchange for a receipt.

Upon request, the owner may change the amount and frequency of the planned premium, including a change to monthly payments in lieu of the planned premium. If monthly payments are elected, then no reminder notices will be sent by us for such payments. Unless we agree otherwise, such change may not increase the total planned premium to be paid in any policy year.

During the insured's lifetime, premium payments may be made at any time before the maturity date provided they do not increase the net amount at risk.

**7 Suicide Exclusion**

If the insured commits suicide within two years of the issue date, we will pay only an amount equal to the premiums paid for this policy less the sum of:

(1) any loan balance; and

(2) any partial withdrawals of the cash surrender value.

If the insured commits suicide within two years of the effective date of any increase in the specified amount, the total death benefit proceeds with respect to such increase will be limited to its cost including any expense charges directly related to such increase.

**8 Amount of Proceeds**

The death benefit is payable upon the death of the insured based on the death benefit option in effect at that time.

Under Option A, the death benefit is the greater of:

(1) the specified amount, plus or minus any increases or decreases in the specified amount, shown on page 3 or 4; or

(2) the cash value on that date divided by the net single premium shown in the table on page 15 based on the sex, age, and rate class of the insured on that date.

Under Option B, the death benefit is the greater of:

(1) the specified amount, plus or minus any increases or decreases in the specified amount, shown on page 3 or 4 plus the cash value on the date of death; or

(2) the cash value on that date divided by the net single premium shown in the table on page 15 based on the sex, age, and rate class of the insured on that date.

Items (2) above are intended to assure that this policy qualifies as life insurance under section 7702 of the Internal Revenue Code of 1986, as amended, using the cash value accumulation test. If this adjustment proves to be insufficient the death benefit will be further increased to assure compliance. At no time will the amount of the death benefit under this policy ever be less than the amount needed to ensure such tax qualification.

The amount of proceeds payable at the death of the insured before the maturity date will be the sum on the date of death of:

(a) the death benefit;

(b) any amount payable under an Extra Benefit Rider; and

(c) a refund of that part of any premium received after the policy processing day in the policy month of death which did not increase the death benefit;

reduced by:

(d) any loan balance; and

(e) if death occurs during the grace period, all overdue monthly deductions.

The amount of proceeds payable on the maturity date, if the insured is then alive, will be the cash surrender value of the basic policy on the maturity date.

## 9 Continuation of Insurance

Upon request of the owner, we will continue this policy in force after the maturity date. The death benefit will be equal to the cash value on the maturity date accumulated at a rate of interest not less than the guaranteed minimum rate shown on page 3 or 4 to the date of death.

## 10 Misstatement of Age or Sex

If the age or sex of the insured or of any person insured under this policy or any riders attached to this policy has been misstated, any amount to be paid under this policy will be adjusted. The adjustment will be:

(a) the amount of insurance which the cost of insurance for the policy month would have purchased using the cost of insurance rate for the correct age and sex; less

(b) the amount of insurance actually used in calculating the cost of insurance for the policy month. See Section 14.

There will be no retroactive adjustments made to the cash surrender value.

## 11 Changes in Specified Amount

Upon request, the owner may change this policy as provided in this section. We must receive any such request in writing in a form satisfactory to us. Any change will become a part of this policy as set forth in Section 3.

No agent has the authority to make any changes to or waive any of the terms of this policy.

We will allow an increase in the specified amount from time to time after the first policy year if:

(1) the owner submits a supplemental application satisfactory to us;

(2) the amount of such increase is in accord with our rules and practices at the time it is applied for;

(3) we receive evidence satisfactory to us that the insured is insurable in the same rate class as this policy;

(4) any required premium payment associated with the increase is paid; and

(5) the insured is not disabled under the terms of any disability rider which is a part of this policy.

The increase will become effective on the policy processing day next following the date we approve the increase. The amount of each increase and its premium and effective date will be shown on page 3 or 4.

We will allow a decrease in the specified amount after the first policy year. We will issue a new policy specifications statement at the time of the decrease.

If there have been increases in the specified amount, the decrease will first be applied against such increases in the reverse order of their effective dates.

The decrease will be effective on the policy processing day next following the date the request is received by us.

## 12 Change in Death Benefit Option

Upon request, the owner may change the death benefit option in effect. We must receive any such request in writing in a form satisfactory to us.

If the change requested is from Option A to Option B, the specified amount will be decreased by the amount of the cash value. If the change requested is from Option B to Option A, the specified amount will be increased by the amount of the cash value.

The change will be effective on the policy processing day next following the date the request is received by us.

## 13 Cash Value

A statement of the method of calculation of values has been filed with the insurance official in the jurisdiction in which this policy is delivered. Policy values and benefits are equal to or greater than those required by law.

On the policy year date, the cash value is the first net premium less the monthly deduction for the first policy month.

On a policy processing day after the policy year date, the cash value is:

(a) the cash value on the prior policy processing day less the amount of any withdrawal of part of the cash surrender value during the prior policy month; plus

(b) interest earned during the prior policy month on (a); plus

(c) all net premiums for premiums received since the prior policy processing day; less

(d) the monthly deduction for the current policy month.

On any day other than a policy processing day, the cash value is:

(e) the cash value on the prior policy processing day less the amount of any withdrawal of part of the cash surrender value during the current policy month; plus

(f) interest earned during the current policy month on (e); plus

(g) all net premiums for premiums received since the prior policy processing day.

The guaranteed minimum cash value interest rate we use to calculate the interest on the cash value is shown on page 3 or 4. We reserve the right to declare a current interest rate to be used in lieu of that rate to calculate the interest on all or part of the cash value. If there is an outstanding policy loan, a different current interest rate may be used to calculate the interest on that portion of the cash value which is equal to the loan principal. The current interest rate will be shown in the periodic report. Every interest rate used will be no less than the guaranteed minimum rate.

## 14 Monthly Deduction and Cost of Insurance
The monthly deduction for each policy month is the sum of:

(a) the cost of insurance (see next paragraph) for the basic policy for the policy month; plus

(b) the cost of insurance for all extra benefit riders for the policy month; plus

(c) the monthly expense charge defined on page 3 or 4.

The cost of insurance for the basic policy for a policy month is the sum on its policy processing day of:

(d) the product of:

   (1)  the net amount at risk on that date; times

   (2)  the monthly cost of insurance rate on that date; and

(e) the flat extra monthly charge shown on page 3 or 4, if any.

The monthly cost of insurance rate is based on the sex, age, and rate class of the insured. Monthly cost of insurance rates will be determined by us annually, by class, based on future expectations as to investment earnings, mortality, persistency, and expenses, including taxes. Any change in rates will be in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which this policy is delivered. Such cost of insurance rates will not be greater than those shown in the table of maximum monthly cost of insurance rates on page 15.

The cost of insurance for an extra benefit rider on a policy processing day is the cost of insurance defined in such rider.

## 15 Lapse
This policy will lapse on the policy processing day that the monthly deduction reduces the cash surrender value to zero or less. Notice of the lapse will be mailed to the last known address of the owner. It will be mailed at least 30 days before the end of the grace period.

If a premium payment sufficient to cover all overdue monthly deductions is not paid by the end of the grace period, all policy rights and benefits will cease at the end of the grace period.

## 16 Reinstatement
We will reinstate this policy if it has not been surrendered when we receive:

(a) a request from the owner within three years of the date of lapse and before the maturity date while the insured is alive;

(b) payment of the cost to reinstate;

(c) payment or reinstatement of any loan balance; and

(d) if required, evidence of insurability satisfactory to us.

The cost to reinstate is a premium large enough to keep this policy in force for at least three months following the date of reinstatement.

The reinstated policy will be in force from the policy processing day following the date the application for reinstatement is approved by us.

We will not require evidence of insurability to reinstate this policy within the 31 days following the end of the grace period if all persons insured are alive. In all other cases, we will require evidence of insurability satisfactory to us.

## 17 Loans
Upon request, the owner may obtain a loan on the sole security of this policy. The owner cannot borrow more than the loan limit less any existing loan principal.

Interest on the loan principal will accrue daily at the effective annual policy loan interest rate defined on page 3 or 4. Interest will be due at the end of each policy year. Interest not paid within 31 days after the due date will be added to and become a part of the loan principal as of the due date.

The loan limit is the amount which, with loan interest to the next interest due date, is equal to the sum of the policy's cash surrender value computed as of the next policy anniversary, including deductions for cost of insurance and expenses, and assuming no additional premium payments are received by us before such anniversary.

All or part of the loan balance may be repaid at any time while the insured is alive. If the loan balance equals or exceeds the cash value, the policy will lapse, at the end of the grace period, as stated in Section 15.

## 18 Surrender for Cash
At any time before the death of the insured the owner may surrender this policy for its cash surrender value by sending the policy and a request to our home office. The date of surrender is the date for surrender on which we receive the policy and request at our home office. All rights and benefits will cease on that date.

## 19 Withdrawal of Part of the Cash Surrender Value

At any time while the insured is alive, but not more frequently than twice in any policy year, the owner may withdraw part of the cash surrender value of this policy by sending a written request to our home office. The date of withdrawal is the date it is received by us. The withdrawal amount less the service charge shown on page 3 or 4 will be paid in one sum to the owner.

The cash value of this policy will be reduced on the date of withdrawal by the withdrawal amount. If Death Benefit Option A is in effect at the time of the withdrawal, the specified amount will be reduced by the amount of the withdrawal.

If there have been increases in the specified amount after the policy year date, the reduction will be applied to the amount of such increases in the reverse order of their effective dates.

The withdrawal amount must be at least $500 but less than the cash surrender value of this policy on the next policy anniversary, including deductions for cost of insurance, expenses and loan interest, and assuming no premium payments are received by us between the withdrawal date and such policy anniversary.

## 20 Ownership

Upon written request in a form satisfactory to us, the owner may change ownership, contingent ownership, or both, without the consent of any beneficiary or contingent owner. We must receive any such request before the death of the insured.

The rights of the owner, any contingent owner, and any beneficiary will be subject to the rights of any assignee of this policy. No assignment will affect us until we receive a copy of it at our home office. We will not be responsible for the validity or effect of any assignment. We will pay an assignee in one sum only.

## 21 Beneficiary

Upon request, the owner may change the beneficiary. The owner may also request that all or part of the proceeds be placed under a payment option for a beneficiary who is a natural person and who is to receive payment in his or her own behalf.

We must receive any such request before the death of the insured. When we approve the request, any prior designation of beneficiary and any prior agreement to place the proceeds under a payment option will cease to be in effect.

If all beneficiaries are natural persons who are to receive payments in their own behalf and none of them is alive when the insured dies, we will, unless it is otherwise provided in the last beneficiary request, pay the proceeds to the owner, or if the owner is the insured, to his or her estate.

## 22 Payment of Proceeds

We will pay interest on any policy proceeds from the date of death of the insured to the date of payment or to the date as of which such proceeds are placed under a payment option. The interest rate will be the rate which we then pay on proceeds held under Option 1 or at such higher rate as may be required by law.

We will place the proceeds under Option 1, 2, 3, 4, 5, or 8 as described in Section 23 upon request by a beneficiary who is a natural person and who is to receive proceeds in one sum in his or her own behalf at the death of the insured before the maturity date, or upon request by the owner on the maturity date if the insured is alive.

Such beneficiary may, if we receive the request before his or her death, name and change the contingent beneficiary who will receive any payment due at such death. In the same manner two such beneficiaries may elect Option 6 or 7, and they or the survivor of them may name and change the contingent beneficiary who will receive any payment due at the death of the survivor.

Payment to the contingent beneficiary will be made in one sum or as agreed with us. If the proceeds have been placed under Option 1 or 2, the amount of any one-sum payment will be the amount then held under Option 1 or 2. If the proceeds have been placed under Option 3, 4, 5, 6, or 7, the amount of any one-sum payment will be the present value of the future minimum payments certain under Option 3, or of the future payments certain under Option 4, 5, 6, or 7.

A natural person who is to receive surrender proceeds in his or her own behalf upon surrender at or after the end of the 5th policy year will have the same rights as those described in this section for a beneficiary.

If a corporation, partnership, or other business entity is the beneficiary at the death of the insured or is the owner when the policy is surrendered, it may:

*(a)* substitute one or more of the insured, the insured's spouse, and the insured's children to receive the amount then payable;

*(b)* choose to receive payments under a payment option based on the life of the insured, if living; if not, on the life of the spouse of the insured, if living; if not, on the life of a child of the insured; or

MPL  99076 81-422 555

(c) choose to receive payments under Option 6 or 7 based on the lives of the insured and another natural person.

If Option 1 is chosen under (b) above, the amount held under it will be paid in one sum at the death of the person upon whose life the option is based.

We may offer special payment options which provide higher guaranteed interest rates for fixed periods and are subject to certain conditions on early withdrawal.

## 23 Payment Options

The following payment options are available. As set forth in a request, payments under an option will be made each month or every 3, 6, or 12 months.

*Option 1 — Interest Income* • We will hold the proceeds until withdrawal or until the death of the beneficiary. On each payment date, we will pay interest on the amount held at a rate determined by us but not less than an effective rate of $3\frac{1}{2}\%$ a year. Each payment will be made at the end of its payment period.

*Option 2 — Level Installments* • We will use the proceeds to make payments of a requested level amount which must total, during a 12-month period, at least $50 for each $1,000 placed under this option. Each payment will be made at the start of its payment period.

On each payment date we will credit interest on the amount held at a rate determined by us but not less than an effective rate of at least $3\frac{1}{2}\%$ compounded each year.

We will make payments until the amount held on the date on which a payment is due is the same as or less than the level amount. The last payment will then be the amount held.

*Option 3 — Installments for a Fixed Period* • We will use the proceeds to make payments for a fixed period of 30 years or less. Each payment will be made at the start of its payment period.

The minimum payments are based on an effective interest rate of $3\frac{1}{2}\%$ compounded each year. Any higher rate we may declare will increase such payments.

The table which follows shows the minimum monthly payments for each $1,000 placed under Option 3.

| Number of Years | Minimum Monthly Payment | Number of Years | Minimum Monthly Payment | Number of Years | Minimum Monthly Payment |
|---|---|---|---|---|---|
| 1 | $84.65 | 11 | $9.09 | 21 | $5.56 |
| 2 | 43.05 | 12 | 8.46 | 22 | 5.39 |
| 3 | 29.19 | 13 | 7.94 | 23 | 5.24 |
| 4 | 22.27 | 14 | 7.49 | 24 | 5.09 |
| 5 | 18.12 | 15 | 7.10 | 25 | 4.96 |
| 6 | 15.35 | 16 | 6.76 | 26 | 4.84 |
| 7 | 13.38 | 17 | 6.47 | 27 | 4.73 |
| 8 | 11.90 | 18 | 6.20 | 28 | 4.63 |
| 9 | 10.75 | 19 | 5.97 | 29 | 4.53 |
| 10 | 9.83 | 20 | 5.75 | 30 | 4.45 |

*Option 4 — Life Income (Payments at Least Equal to Proceeds Applied)* • We will use the proceeds to make level payments during the life of the beneficiary. Payments will continue, if the beneficiary dies, to the end of the payment year during which the sum of all payments made equals the proceeds placed under this option. Each payment will be made at the beginning of its payment period. The table which follows shows the minimum monthly payments for each $1,000 placed under Option 4. Upon request, we will quote payments for ages not shown.

*Option 5 — Life Income (Choice of Period Certain)* • We will use the proceeds to make level payments during the life of the beneficiary. If a period certain of 5, 10, or 20 years is chosen, payments will continue to the end of such period even if the beneficiary dies before then. If no period certain is chosen, all payments will cease with the last payment due before the death of the beneficiary. Each payment will be made at the beginning of its payment period. The table which follows shows the minimum monthly payments for each $1,000 placed under Option 5. Upon request, we will quote payments for ages not shown.

| Age of Beneficiary Male | Female | Option 4 | No Years Certain | 5 Years Certain | 10 Years Certain | 20 Years Certain |
|---|---|---|---|---|---|---|
| | | | MINIMUM MONTHLY PAYMENT — Option 5 | | | |
| 15 | 21 | $3.21 | $3.22 | $3.22 | $3.22 | $3.21 |
| 20 | 26 | 3.28 | 3.29 | 3.29 | 3.29 | 3.28 |
| 25 | 31 | 3.36 | 3.38 | 3.38 | 3.37 | 3.37 |
| 30 | 36 | 3.46 | 3.48 | 3.48 | 3.48 | 3.47 |
| 31 | 37 | 3.48 | 3.51 | 3.51 | 3.50 | 3.49 |
| 32 | 38 | 3.51 | 3.53 | 3.53 | 3.53 | 3.52 |
| 33 | 39 | 3.53 | 3.56 | 3.56 | 3.56 | 3.54 |
| 34 | 40 | 3.56 | 3.59 | 3.59 | 3.58 | 3.57 |
| 35 | 41 | 3.58 | 3.62 | 3.62 | 3.61 | 3.60 |
| 36 | 42 | 3.61 | 3.65 | 3.65 | 3.64 | 3.62 |
| 37 | 43 | 3.64 | 3.68 | 3.68 | 3.68 | 3.65 |
| 38 | 44 | 3.67 | 3.72 | 3.72 | 3.71 | 3.69 |
| 39 | 45 | 3.71 | 3.75 | 3.75 | 3.75 | 3.72 |
| 40 | 46 | 3.74 | 3.79 | 3.79 | 3.78 | 3.75 |
| 41 | 47 | 3.77 | 3.83 | 3.83 | 3.82 | 3.79 |
| 42 | 48 | 3.81 | 3.87 | 3.87 | 3.86 | 3.83 |
| 43 | 49 | 3.85 | 3.92 | 3.92 | 3.91 | 3.86 |
| 44 | 50 | 3.89 | 3.97 | 3.96 | 3.95 | 3.90 |
| 45 | 51 | 3.93 | 4.01 | 4.01 | 4.00 | 3.94 |
| 46 | 52 | 3.98 | 4.07 | 4.06 | 4.05 | 3.99 |
| 47 | 53 | 4.02 | 4.12 | 4.11 | 4.10 | 4.03 |
| 48 | 54 | 4.07 | 4.18 | 4.17 | 4.15 | 4.08 |
| 49 | 55 | 4.11 | 4.23 | 4.23 | 4.21 | 4.13 |
| 50 | 56 | 4.18 | 4.30 | 4.29 | 4.27 | 4.18 |
| 51 | 57 | 4.23 | 4.36 | 4.35 | 4.33 | 4.23 |
| 52 | 58 | 4.28 | 4.43 | 4.42 | 4.39 | 4.28 |
| 53 | 59 | 4.33 | 4.50 | 4.49 | 4.46 | 4.33 |
| 54 | 60 | 4.41 | 4.58 | 4.57 | 4.53 | 4.38 |
| 55 | 61 | 4.47 | 4.66 | 4.64 | 4.61 | 4.45 |
| 56 | 62 | 4.53 | 4.74 | 4.73 | 4.69 | 4.51 |
| 57 | 63 | 4.60 | 4.83 | 4.82 | 4.77 | 4.57 |
| 58 | 64 | 4.69 | 4.93 | 4.91 | 4.86 | 4.63 |
| 59 | 65 | 4.76 | 5.03 | 5.01 | 4.95 | 4.69 |
| 60 | 66 | 4.83 | 5.14 | 5.12 | 5.05 | 4.76 |
| 61 | 67 | 4.94 | 5.25 | 5.23 | 5.15 | 4.82 |
| 62 | 68 | 5.02 | 5.38 | 5.35 | 5.26 | 4.88 |
| 63 | 69 | 5.10 | 5.51 | 5.48 | 5.37 | 4.95 |
| 64 | 70 | 5.24 | 5.65 | 5.61 | 5.49 | 5.01 |
| 65 | 71 | 5.33 | 5.80 | 5.76 | 5.62 | 5.07 |
| 66 | 72 | 5.42 | 5.96 | 5.91 | 5.75 | 5.14 |
| 67 | 73 | 5.56 | 6.14 | 6.08 | 5.88 | 5.20 |
| 68 | 74 | 5.65 | 6.32 | 6.25 | 6.03 | 5.25 |
| 69 | 75 | 5.78 | 6.52 | 6.43 | 6.18 | 5.31 |
| 70 | 76 | 5.98 | 6.73 | 6.63 | 6.33 | 5.36 |
| 71 | 77 | 6.09 | 6.95 | 6.83 | 6.49 | 5.41 |
| 72 | 78 | 6.20 | 7.18 | 7.04 | 6.61 | 5.46 |
| 73 | 79 | 6.44 | 7.43 | 7.27 | 6.81 | 5.50 |
| 74 | 80 & over | 6.56 | 7.70 | 7.51 | 6.96 | 5.54 |
| 75 | | 6.66 | 7.99 | 7.76 | 7.15 | 5.57 |
| 76 | | 6.97 | 8.29 | 8.02 | 7.32 | 5.60 |
| 77 | | 7.10 | 8.62 | 8.30 | 7.49 | 5.63 |
| 78 | | 7.23 | 8.97 | 8.90 | 7.67 | 5.65 |
| 79 | | 7.60 | 9.34 | 8.90 | 7.84 | 5.67 |
| 80 & over | | 7.74 | 9.74 | 9.22 | 8.01 | 5.69 |

**Option 6—Joint Life Income** (Choice of Period Certain)• We will use the proceeds to make level payments while either of two beneficiaries is alive. We will make the first payment at the start of the first payment period. If a period certain is chosen, payments will continue to the end of the period if both beneficiaries die before the end of such period. If no period certain is chosen, all payments will cease with the last payment due before the death of the survivor. The table which follows shows the minimum payments for each $1,000 placed under Option 6 for two beneficiaries (one male and one female) of the same age. Upon request, we will quote payments for any combination of ages and sexes not shown, or other available certain periods.

| Age* | No Years Certain | 10 Years Certain | 20 Years Certain | Age* | No Years Certain | 10 Years Certain | 20 Years Certain |
|---|---|---|---|---|---|---|---|
| | MINIMUM MONTHLY PAYMENT | | | | MINIMUM MONTHLY PAYMENT | | |
| 40 | $3.42 | $3.42 | $3.42 | 61 | $4.25 | $4.25 | $4.22 |
| 41 | 3.44 | 3.44 | 3.44 | 62 | 4.32 | 4.32 | 4.28 |
| 42 | 3.47 | 3.47 | 3.47 | 63 | 4.39 | 4.39 | 4.35 |
| 43 | 3.49 | 3.49 | 3.49 | 64 | 4.47 | 4.46 | 4.41 |
| 44 | 3.52 | 3.52 | 3.52 | 65 | 4.55 | 4.54 | 4.48 |
| 45 | 3.55 | 3.55 | 3.55 | 66 | 4.64 | 4.63 | 4.55 |
| 46 | 3.58 | 3.58 | 3.58 | 67 | 4.73 | 4.72 | 4.62 |
| 47 | 3.61 | 3.61 | 3.61 | 68 | 4.83 | 4.81 | 4.69 |
| 48 | 3.64 | 3.64 | 3.64 | 69 | 4.93 | 4.92 | 4.76 |
| 49 | 3.67 | 3.67 | 3.67 | 70 | 5.04 | 5.02 | 4.84 |
| 50 | 3.71 | 3.71 | 3.71 | 71 | 5.16 | 5.14 | 4.91 |
| 51 | 3.75 | 3.75 | 3.74 | 72 | 5.28 | 5.26 | 4.99 |
| 52 | 3.79 | 3.79 | 3.78 | 73 | 5.42 | 5.38 | 5.06 |
| 53 | 3.83 | 3.83 | 3.82 | 74 | 5.56 | 5.52 | 5.13 |
| 54 | 3.87 | 3.87 | 3.86 | 75 | 5.71 | 5.66 | 5.20 |
| 55 | 3.92 | 3.92 | 3.91 | 76 | 5.88 | 5.80 | 5.27 |
| 56 | 3.97 | 3.97 | 3.96 | 77 | 6.05 | 5.96 | 5.33 |
| 57 | 4.02 | 4.02 | 4.00 | 78 | 6.24 | 6.12 | 5.39 |
| 58 | 4.07 | 4.07 | 4.06 | 79 | 6.43 | 6.29 | 5.44 |
| 59 | 4.13 | 4.13 | 4.11 | 80 & over | 6.64 | 6.46 | 5.49 |
| 60 | 4.19 | 4.19 | 4.16 | | | | |

*Age of each beneficiary - (1 Male and 1 Female)

**Option 7—Joint and One-Half Life Income** (Choice of Period Certain)• We will use the proceeds to make payments while either of two beneficiaries (called the first beneficiary and the second beneficiary) is alive. We will make the first payment at the start of the first payment period. After the death of the first beneficiary, the amount of the payments will be reduced by one-half. If a period certain is chosen, payments will continue to the end of that period and will not be reduced, even if both beneficiaries die before the end of such period. If no period certain is chosen, all payments will cease with the last payment due before the death of the survivor.

The table which follows shows the initial minimum payments for each $1,000 placed under Option 7 for two beneficiaries (a male first beneficiary and a female second beneficiary) of the same age. Upon request, we will quote payments for any combination of ages and sexes not shown, or other available certain periods.

| Age* | MINIMUM MONTHLY PAYMENT | | Age* | MINIMUM MONTHLY PAYMENT | |
|---|---|---|---|---|---|
| | No. Years Certain | 10 Years Certain | | No. Years Certain | 10 Years Certain |
| 40 | $3.60 | $3.59 | 61 | $4.70 | $4.66 |
| 41 | 3.63 | 3.62 | 62 | 4.79 | 4.74 |
| 42 | 3.66 | 3.66 | 63 | 4.89 | 4.83 |
| 43 | 3.69 | 3.69 | 64 | 4.99 | 4.93 |
| 44 | 3.73 | 3.72 | 65 | 5.10 | 5.03 |
| 45 | 3.77 | 3.76 | 66 | 5.22 | 5.13 |
| 46 | 3.81 | 3.80 | 67 | 5.34 | 5.24 |
| 47 | 3.85 | 3.84 | 68 | 5.47 | 5.35 |
| 48 | 3.89 | 3.88 | 69 | 5.61 | 5.47 |
| 49 | 3.93 | 3.92 | 70 | 5.76 | 5.60 |
| 50 | 3.96 | 3.97 | 71 | 5.92 | 5.73 |
| 51 | 4.03 | 4.02 | 72 | 6.09 | 5.87 |
| 52 | 4.08 | 4.07 | 73 | 6.27 | 6.01 |
| 53 | 4.14 | 4.12 | 74 | 6.46 | 6.16 |
| 54 | 4.20 | 4.18 | 75 | 6.66 | 6.31 |
| 55 | 4.26 | 4.23 | 76 | 6.88 | 6.47 |
| 56 | 4.32 | 4.30 | 77 | 7.11 | 6.64 |
| 57 | 4.39 | 4.36 | 78 | 7.36 | 6.80 |
| 58 | 4.46 | 4.43 | 79 | 7.62 | 6.98 |
| 59 | 4.53 | 4.50 | 80 & over | 7.90 | 7.15 |
| 60 | 4.62 | 4.58 | | | |

*Age of each beneficiary - (1 Male and 1 Female)

The amount of the payments under Option 4, 5, 6, or 7 will not be less than the amount shown in the table which applies. If our rates for single premium immediate annuities as of the date of the first payment provide larger payments than those guaranteed in this policy, they will be used as the basis for determining the amount of the payments. The payments will be based on the age at nearest birthday and sex of each person on whose life they are based. We will need proof of date of birth before we can make any payment. If an age or sex on which the payments are based is not correct, we will determine the amount of all payments on the correct basis. If the payments for a longer period certain are equal to those for the requested period, the longer period will be deemed to have been requested.

The tables which appear with Options 3, 4, 5, 6, and 7 show the minimum monthly payment for each option. The amount of each minimum payment to be made during the periods shown below will be computed by multiplying the monthly payment by the factor shown.

| Period | Factor |
|---|---|
| 3 months | 2.991 |
| 6 months | 5.957 |
| 12 months | 11.813 |

We may change the frequency of payments so that the payment is at least $50. We will pay in one sum any amount which results in a minimum payment of less than $100 a year.

*Option 8 – Deferred income•* We will use the proceeds to make payments after a deferral period selected by the beneficiary.

During the deferral period, we will credit interest at a rate to be determined by us, but not less than an effective rate of 3½% a year.

At the end of the deferral period, the proceeds held, including interest, will be used to provide an income under Options 1 through 7 above.

During the deferral period, this option may be surrendered for its then current value.

If the beneficiary dies during the deferral period, the proceeds held at that time, including interest, will be paid to the contingent beneficiary.

Unless such rights have been withheld, the beneficiary may, upon request, withdraw the amount held under Option 1, 2, or 8, or have us make a one-sum payment of the present value of the future minimum payments certain under Option 3 or of the future payments certain under Option 4, 5, 6, or 7. To compute the present value under Option 4, 5, 6, or 7, we will use the interest rate which was used to determine the amount of the payments certain. If we receive a request for the one-sum payment within 90 days after the insured dies and before any payment has been made under Option 4, 5, 6, or 7, we will pay the full amount which was placed under such option.

## 24  Deferment of Payment

We may defer any payment due upon request for a loan, for the cash surrender value, or for a partial withdrawal of the cash surrender value, or for a one-sum payment under a payment option. We may defer payment for the period permitted by law but not for longer than 6 months. We will not defer payment of an amount used to pay premiums to us.

We will not charge or pay interest on a loan for the period for which we defer payment. We will pay interest on the amount of any other payment we defer for more than 30 days at the rate which we then credit on proceeds held under Option 1.

1158

MAL  99078 al-422 855

Maximum Monthly Cost of Insurance Rates and Net Single Premiums, Per $1,000, Based on the 1980 Commissioners Standard Ordinary Smoker/Non-Smoker Mortality and Interest of 4% Per Year.

## MALE NON-SMOKER INSURED-STANDARD ISSUE

| Age | Cost of Insurance Rates | Net Single Premiums | Age | Cost of Insurance Rates | Net Single Premiums |
|-----|-----|-----|-----|-----|-----|
| 0 | $ .35 | $ 81.11 | 50 | $ .41 | $ 381.82 |
| 1 | .09 | 80.42 | 51 | .45 | 394.02 |
| 2 | .08 | 82.64 | 52 | .49 | 406.50 |
| 3 | .08 | 85.02 | 53 | .54 | 419.25 |
| 4 | .08 | 87.51 | 54 | .59 | 432.24 |
| 5 | .08 | 90.13 | 55 | .65 | 445.46 |
| 6 | .07 | 92.90 | 56 | .72 | 458.89 |
| 7 | .07 | 95.82 | 57 | .79 | 472.52 |
| 8 | .06 | 98.92 | 58 | .87 | 486.36 |
| 9 | .06 | 102.18 | 59 | .96 | 500.40 |
| 10 | .06 | 105.59 | 60 | 1.05 | 514.63 |
| 11 | .06 | 109.15 | 61 | 1.16 | 529.01 |
| 12 | .07 | 112.81 | 62 | 1.29 | 543.53 |
| 13 | .08 | 116.55 | 63 | 1.43 | 558.15 |
| 14 | .10 | 120.32 | 64 | 1.59 | 572.83 |
| 15 | .11 | 124.10 | 65 | 1.76 | 587.52 |
| 16 | .12 | 127.91 | 66 | 1.95 | 602.19 |
| 17 | .13 | 131.76 | 67 | 2.16 | 616.85 |
| 18 | .13 | 135.67 | 68 | 2.38 | 631.49 |
| 19 | .14 | 139.69 | 69 | 2.62 | 646.09 |
| 20 | .14 | 143.82 | 70 | 2.89 | 660.67 |
| 21 | .14 | 148.11 | 71 | 3.25 | 675.16 |
| 22 | .14 | 152.58 | 72 | 3.56 | 689.30 |
| 23 | .13 | 157.27 | 73 | 3.97 | 703.41 |
| 24 | .13 | 162.18 | 74 | 4.43 | 717.19 |
| 25 | .13 | 167.33 | 75 | 4.92 | 730.57 |
| 26 | .12 | 172.74 | 76 | 5.45 | 743.55 |
| 27 | .12 | 178.40 | 77 | 6.01 | 756.14 |
| 28 | .12 | 184.32 | 78 | 6.58 | 768.37 |
| 29 | .12 | 190.50 | 79 | 7.19 | 780.31 |
| 30 | .12 | 196.93 | 80 | 7.87 | 792.00 |
| 31 | .12 | 203.63 | 81 | 8.62 | 803.40 |
| 32 | .13 | 210.59 | 82 | 9.47 | 814.49 |
| 33 | .13 | 217.81 | 83 | 10.42 | 825.17 |
| 34 | .13 | 225.30 | 84 | 11.47 | 835.34 |
| 35 | .14 | 233.04 | 85 | 12.59 | 844.96 |
| 36 | .15 | 241.05 | 86 | 13.75 | 854.02 |
| 37 | .16 | 249.33 | 87 | 14.95 | 862.59 |
| 38 | .17 | 257.87 | 88 | 16.16 | 870.74 |
| 39 | .18 | 266.68 | 89 | 17.41 | 878.62 |
| 40 | .19 | 275.75 | 90 | 18.69 | 886.37 |
| 41 | .21 | 285.10 | 91 | 20.05 | 894.16 |
| 42 | .22 | 294.71 | 92 | 21.52 | 902.19 |
| 43 | .24 | 304.61 | 93 | 23.16 | 910.71 |
| 44 | .26 | 314.78 | 94 | 25.26 | 920.04 |
| 45 | .28 | 325.24 | 95 | 28.27 | 930.43 |
| 46 | .30 | 335.98 | 96 | 33.11 | 941.95 |
| 47 | .32 | 347.00 | 97 | 41.68 | 954.50 |
| 48 | .35 | 358.31 | 98 | 58.01 | 967.74 |
| 49 | .38 | 369.92 | 99 | 90.91 | 980.56 |

If this policy was issued in a rated class, the cost of insurance rates shall be multiplied by the basic policy rated class factor shown on page 3.

1160

1161

MAL   99076 al-422 855

1162

Flexible Premium Adjustable Life Policy
Adjustable Death Benefit
Flexible Premium Payments
Cash Surrender Value Payable on the Maturity Date
Nonparticipating - No Dividends

The Mutual Benefit Life Insurance Company in Rehabilitation
520 Broad Street, Newark, New Jersey 07102-3111