UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY BROOKS and JOAN SILVERMAN

                   :

             Plaintiffs,            Civil Action

                   :       No. 05-10994-WGY

      v.

                   :

AIG SUNAMERICA LIFE ASSURANCE
COMPANY

                   :

             Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## AIG SUNAMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS

James R. Carroll
Michael S. Hines
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
AIG SunAmerica Life Assurance Company

Dated:  October 25, 2005

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ALLEGATIONS....................................................................................................................2

ARGUMENT .........................................................................................................................4

I.      PLAINTIFFS DID NOT FILE A SUPPLEMENTAL PLEADING
ALLEGING HOW THE POLICY WAS BREACHED, CONSEQUENTLY,
THE REMAINING COUNTS SHOULD BE DISMISSED WITH PREJUDICE.............4

II.     COUNTS I, III AND IV SHOULD BE DISMISSED BECAUSE
THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH
OF CONTRACT, AND PLAINTIFFS' SUR-REPLY DEMONSTRATES
THAT THEY CANNOT ADEQUATELY PLEAD A BREACH OF CONTRACT .........5

        A.     Wholly Conclusory Allegations -- Like Those Asserted
Here -- Are Insufficient To Demonstrate With The Requisite
*Substantial Certainty* That AIG SunAmerica Breached The Policy .....................5

        B.     Plaintiffs' Sur-Reply Demonstrates That Plaintiffs Have Not -- And
Cannot -- Plead Facts Sufficient To State A Claim For Breach Of Contract .........5

             1.     Plaintiffs' Citation To The Calculation
Of The Policy's Cash Value Is Irrelevant ...................................................6

             2.     Plaintiffs' Argument That Massachusetts Law Requires The
Filing Of The "Procedures And Standards" At Issue Here Is Baseless.......7

III.    COUNT IV SHOULD BE DISMISSED FOR THE
INDEPENDENT REASON THAT PLAINTIFFS HAVE NOT
ALLEGED ANY "UNLAWFUL" OR "UNFAIR" CONDUCT.....................................8

        A.     Conclusory Allegations OF Breach Of Contract Are
Insufficient To State A Claim Of "Unlawful" Conduct........................................9

        B.     Conclusory Allegations Of "Unfairness" Fail To State A Claim ........................10

CONCLUSION .....................................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>                                                                                          <u>**PAGE(S)**</u>

Accuimage Diagnostics Corp. v. Terarecon, Inc.,
    260 F. Supp. 2d 941 (N.D. Cal. 2003)....................................................9, 10

Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996) ......................................................... 2

Beddall v. State St. Bank & Trust Co.,
    137 F.3d 12 (1st Cir. 1998)............................................................................. 4

Bernardo v. Planned Parenthood Fed'n of Am.,
    9 Cal. Rptr. 3d 197 (Cal. Ct. App. 2004)........................................................ 9

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    973 P.2d 527 (Cal. 1999)...........................................................................8, 10

Collier v. City of Chicopee, 158 F.3d 601 (1st Cir. 1998)......................................... 2

Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) ................................................. 4

Gregory v. Albertson's, Inc.,
    128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002)...........................................8, 9, 10

In re Segue, Inc. Sec. Litig., 106 F. Supp. 2d 161 (D. Mass. 2000) ........................... 2

Khoury v. Maly's of Cal., Inc., 17 Cal. Rptr. 2d 708 (Cal. Ct. App. 1993) .......8, 9, 10

Klein v. Earth Elements, Inc., 69 Cal. Rptr. 2d 623 (Cal. Ct. App. 1997).................. 9

LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507 (1st Cir. 1998)......................... 2

Loudermill v. Cleveland Bd. Of Educ., 844 F.2d 304 (8th Cir. 1988)....................... 4

Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003).........................................................10

S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,
    85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999)...................................................... 9

**STATUTES**                                                                                              **PAGE(S)**

Cal. Bus. & Prof. Code § 17200 ................................................................................ 8

**OTHER AUTHORITIES**                                                                          **PAGE(S)**

Fed. R. Civ. P. 7(a) ................................................................................................ 4

211 Mass. Code Regs. 95.06 ................................................................................ 7

## PRELIMINARY STATEMENT

During the October 5, 2005 motion hearing, the Court dismissed only Count II of the complaint (the "Complaint"), and further directed plaintiffs Nancy Brooks and Joan Silverman (collectively, "plaintiffs") to file, within 10 days, a "supplemental pleading identifying with some specificity the provision or provisions of the contract alleged to have been breached and the manner in which they were breached."[1]  Instead of filing a supplemental pleading, plaintiffs filed a brief in further opposition to defendant AIG SunAmerica Life Assurance Company's ("AIG SunAmerica") motion to dismiss.[2]  The Sur-reply, however, does nothing to add any content to the entirely conclusory allegations of the Complaint and, indeed, only confirms that plaintiffs cannot now (or ever) adequately plead a breach of contract claim.

Plaintiffs' entire case -- even after ordered to identify " with some specificity the provision or provisions of the contract alleged to have been breached and the manner in which they were breached" (Trans. at 8:17-19) -- still hinges exclusively on the same conclusory and nonspecific "information and belief" allegation:

> 20.  Upon information and belief, the [Cost of Insurance] Rate Increases were not made 'in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which' any of the Mutual Life Block of Policies were delivered."

(Compl. ¶ 20 (emphasis omitted).)  Plaintiffs have done nothing to attempt to cure the problem. The crucial "procedures and standards" are still not specified, nor is there anything that specifies how such unidentified procedures and standards were breached.  AIG SunAmerica respectfully

---

[1]     Transcript of Motion Hearing dated October 5, 2005 at 8:9-19 (cited as "Trans. at __.") (attached hereto as Exhibit A).

[2]     Plaintiffs' Supplement To Their Opposition To Defendant's Motion To Dismiss (Docket No. 12) (the "Sur-reply") (cited as "Sur-reply at __").

submits that the point of the Court's Order at the October 5, 2005 hearing was to have plaintiffs allege <u>what</u> "procedures and standards" plaintiffs claim were not followed and in what manner they were not followed. As is apparent from the briefing (and largely conceded at argument) plaintiffs cannot do so because plaintiffs (like AIG SunAmerica) have no idea what those "procedures and standards" are or if they even exist. Because the remaining three Counts are dependent upon the same inadequate allegation of breach, the Complaint fails as a matter of law.[3]

Independent of the dispositive failure to plead a breach of contract, plaintiffs' claim based upon the California Unfair Competition Law (the "UCL") should be dismissed for the additional reason that plaintiffs have not alleged an <u>independently</u> actionable statutory or regulatory violation. Such an allegation is required as a matter of law for conduct to be "unlawful" pursuant to the UCL. In addition, to be "unfair," conduct (while technically not prohibited by law) must have the <u>effect</u> of violating a <u>specific</u> constitutional provision, statute or regulation. Allegations of breach of contract simply do not meet that standard.

## **ALLEGATIONS**[4]

Plaintiffs allege that they are trustees of the Irrevocable Trust of Donald L. Silverman (the "Trust") and executrices of the Estate of Donald L. Silverman. (Compl. ¶ 2.)

---

[3]    Counts I, III and IV (the only claims remaining after the Court's October 5, 2005 ruling), assert claims for (i) breach of contract, (ii) violation of Mass. Gen. Laws ch. 93A and (iii) violation of the California Unfair Business Practices Act, respectively.

[4]    The standard of review for a motion for judgment on the pleadings is the same as a motion brought pursuant to Fed. R. Civ. P. 12(b)(6). <u>See</u> <u>Collier v. City of Chicopee</u>, 158 F.3d 601, 602 (1st Cir. 1998). Although plaintiffs' well-pleaded allegations are taken as true solely for the purposes of this motion, the bald assertions, unsubstantiated conclusions and unsupported characterizations set forth in the Complaint are to be disregarded. <u>See, e.g.</u>, <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998) (affirming dismissal); <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (affirming dismissal); <u>In re Segue, Inc. Sec. Litig.</u>, 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (dismissing complaint).

The Mutual Benefit Life Insurance Company ("Mutual Benefit") originally issued a life insurance policy (the "Original Policy") to Donald L. Silverman ("Mr. Silverman") on May 1, 1984. (Id.) Mr. Silverman was the insured on the Original Policy, as well as the Original Policy's owner and beneficiary. In March 1991, Mr. Silverman changed the ownership and beneficiary of the Original Policy to the Trust.

In 1994, with Mutual Benefit in financial distress, the New Jersey Commissioner of Insurance assumed control of Mutual Benefit. The New Jersey Commissioner adopted a rehabilitation plan (the "Rehabilitation Plan") in which substantially all of Mutual Benefit's assets, and certain liabilities, were assigned to MBL Life Assurance Corporation ("MBL Life"). (Id. ¶ 15.) The New Jersey Superior Court approved the Rehabilitation Plan in May 1994. (Id.)

In connection with the court-approved Rehabilitation Plan, Mutual Benefit policy owners could either (i) opt-out of the Rehabilitation Plan, in which case they would receive 55% of the cash surrender value of their policies as of a date certain, or (ii) opt-in to the Rehabilitation Plan, in which case their policies would be restructured, and the full value of the policies would be maintained and transferred to MBL Life. (Id. ¶ 16.) In 1994, Mr. Silverman elected to retain the full value of the Original Policy, and opted into the Rehabilitation Plan. In 1999, in a transaction approved by the New Jersey Commissioner and supervised by the New Jersey Superior Court pursuant to the Rehabilitation Plan, AIG SunAmerica (formerly Anchor National Life Assurance Company) acquired the MBL Life polices that MBL Life had acquired from Mutual Benefit, including Mr. Silverman's Restructured Policy (the "Policy").[5] (Id. ¶ 17.) With respect to monthly cost of insurance ("COI") rate increases, the Policy provides:

---

[5]     The Policy is attached as Exhibit A to Defendant AIG SunAmerica's Answer And Affirmative Defenses, filed contemporaneously herewith.

> The monthly cost of insurance rate is based on the sex, age, and
> rate class of the insured.  Monthly cost of insurance rates will be
> determined by us annually, by class, based on future expectations
> as to investment earnings, mortality, persistency, and expenses,
> including taxes.  Any change in rates will be in accordance with
> any procedures and standards on file with the Insurance
> Department of the jurisdiction in which this policy is delivered.
> Such cost of insurance rates will not be greater than those shown in
> the table of maximum monthly cost of insurance rates on page 15.

(Policy at ¶ 14.)  Mr. Silverman died on June 27, 2001, and AIG SunAmerica duly paid to the

Trust $857,901.86, representing the Policy's full death benefit plus interest.

## ARGUMENT

I.   **PLAINTIFFS DID NOT FILE A SUPPLEMENTAL PLEADING
     ALLEGING HOW THE POLICY WAS BREACHED, CONSEQUENTLY,
     THE REMAINING COUNTS SHOULD BE DISMISSED WITH PREJUDICE**

         During the October 5, 2005 motion hearing, the Court directed plaintiffs to "file a

supplemental pleading identifying with some specificity the provision or provisions of the

contract alleged to have been breached and the manner in which they were breached." (Trans. at

8:16-19.)  In response to the Court's Order, plaintiffs instead filed the Sur-reply.[6]

         Even if the legal arguments in plaintiffs' Sur-reply were treated as allegations,

they nonetheless fail to explain the breach plaintiffs seek to allege.  Indeed, AIG SunAmerica

still has no notice of what the alleged breach is, much less that required by Doyle v. Hasbro, Inc.,

103 F.3d 186, 194-95 (1st Cir. 1996) (affirming dismissal of breach of contract claim and

holding allegation that defendants "failed to meet their contractual requirement" insufficient to

state a claim).

---

[6]      The Sur-reply is not a pleading.  See Fed. R. Civ. P. 7(a); see also Loudermill v.
Cleveland Bd. Of Educ., 844 F.2d 304, 309 (8th Cir. 1988) (holding that briefs are not pleadings).

## II.    COUNTS I, III AND IV SHOULD BE DISMISSED BECAUSE THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT, AND PLAINTIFFS' SUR-REPLY DEMONSTRATES THAT THEY CANNOT ADEQUATELY PLEAD A BREACH OF CONTRACT

### A.    Wholly Conclusory Allegations -- Like Those Asserted Here -- Are Insufficient To Demonstrate With The Requisite *Substantial Certainty* That AIG SunAmerica Breached The Policy

To avoid repetition, AIG SunAmerica adopts and incorporates as if set forth herein the arguments and authorities in the Memorandum Of Law In Support Of Defendant AIG SunAmerica's Motion To Dismiss (Docket No. 7) and the Reply Memorandum Of Law In Further Support Of Defendant AIG SunAmerica's Motion To Dismiss (Docket No. 10) concerning the dismissal of the Complaint for failure to state a claim for breach of contract.

### B.    Plaintiffs' Sur-Reply Demonstrates That Plaintiffs Have Not -- And Cannot -- Plead Facts Sufficient To State A Claim For Breach Of Contract

Even if the Court were to treat plaintiffs' Sur-reply as a supplemental pleading, the arguments asserted in that filing actually support AIG SunAmerica's argument.  Plaintiffs make two arguments in support of how the Policy was breached: (i) that the Policy language itself required that "procedures and standards" governing monthly COI rate increases be filed with the Massachusetts Division of Insurance and (ii) Massachusetts law mandated that such "procedures and standards" be filed with the Massachusetts Division of Insurance at the time MBL Life sought approval for the form of Policy.[7]  (Sur-reply at 2-3.)  Both arguments are without merit, and are not supported by the language of the Policy nor by the Massachusetts regulation upon which plaintiffs rely.

---

[7]    Plaintiffs also speculate that the procedures and standards are not presently located in the public record because the Massachusetts Division of Insurance "lost the COI Rate Increase Filing." (Sur-reply at 3-4.)  Guessing is insufficient to state a claim.

5

1.    **Plaintiffs' Citation To The Calculation
Of The Policy's Cash Value Is Irrelevant**

Plaintiffs first argue that the Policy mandates that the procedures and standards concerning monthly COI rate increases be filed with the Massachusetts Division of Insurance because the Policy states "A statement of the method of calculation of values has been filed with the insurance official in the jurisdiction in which this policy is delivered." (Sur-reply at 2.) But that *partial* quote comes from a provision of the Policy concerning the cash value of the Policy (¶ 13 of the Policy), and is wholly inapplicable to increases in monthly COI rates (which are at ¶ 14 of the Policy):

> **13 Cash Value**
>
> A statement of the method of calculation of values has been filed with the insurance official in the jurisdiction in which this policy is delivered. Policy values and benefits are equal to or greater than those required by law.
>
> On the policy year date, the cash value is the first net premium less the monthly deduction for the first policy month . . . .

(Policy at ¶13.) Plaintiffs do not allege that such a cash value statement was not filed. In any event, that statement has nothing to do with monthly COI rates.

Moreover, plaintiffs' confusing assertion that "monthly deductions include the cost of insurance" and, therefore "necessarily includes the calculation of COI rates" not only misses the point, but is also mistaken. (Sur-reply at 2.) The dispositive issue in this litigation is whether the alleged monthly COI rate increases (i.e., the change in monthly COI rates) breached the Policy. (Compl. ¶¶ 19-21.) Plaintiffs' Sur-reply says nothing concerning the change in monthly COI rates. Nor could it. The fact that the calculation of the Policy's cash value on a particular day includes "monthly deductions" is irrelevant to the alleged increase (or, more specifically, the determination of that alleged increase) in monthly COI rates. Plaintiffs'

6

assertion to the contrary is not credible, and the fact that plaintiffs even make such a nonsensical argument further confirms their inability to do what was ordered on October 5th: "identify[] with some specificity . . . the manner in which [the Policy was] breached." (Trans. at 8:16-19.)[8]

2.    **Plaintiffs' Argument That Massachusetts Law Requires The Filing Of The "Procedures And Standards" At Issue Here Is Baseless**

Plaintiffs also argue that before a form of policy may be issued in the Commonwealth, Massachusetts law mandates that an insurer file procedures reflecting how any increases in monthly COI rates will be determined. (Sur-reply at 2-3 (citing 211 Mass. Code Regs. 95.06 (2004)).) But as demonstrated by the plain language of the very regulation plaintiffs rely upon, they are mistaken.

That regulation concerns the filing of a memorandum describing how a company determines reserve liabilities for guaranteed death benefits, not how it calculates changes in monthly COI rates:

> (1)    Before any insurance company can deliver or issue for delivery any variable life insurance policy within the Commonwealth, the policy must be filed with, and approved by, the Commissioner.

> (2)    Each filing for approval of a variable life insurance policy form shall include an actuarial memorandum, prepared and certified by a qualified actuary . . . which contains a description of the company's methodology(ies) used to determine reserve liabilities for any guaranteed death benefits and other contingencies, including the mortality, expenses and other risks which the insurer will bear under the policy.

211 Mass. Code Regs. 95.06 (2004) (emphasis added).

---

[8]    Indeed, the Policy was not breached at all. As plaintiffs concede, the monthly COI rates were far below (more than 30%) the maximum allowed under the Policy. (Compl. ¶ 21.)

7

Put simply, this regulation has nothing to do with changes in monthly COI rates. Once again, plaintiffs' citation to inapplicable authorities confirms their inability to plead facts sufficient to demonstrate with substantial certainty that AIG SunAmerica breached the Policy.[9]

## III.  COUNT IV SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT PLAINTIFFS HAVE NOT ALLEGED ANY "UNLAWFUL" OR "UNFAIR" CONDUCT

Count IV purports to assert a claim pursuant to the UCL.[10]  (Compl. ¶¶ 37-43.) In conclusory fashion, the Complaint asserts that AIG SunAmerica acted unlawfully and unfairly, but nowhere alleges facts sufficient to support those blanket assertions.  That is insufficient under California law; accordingly, Count IV should be dismissed.

Section 17200 of the UCL defines unfair competition as any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Consequently, a court must determine independently whether the allegations are sufficient to state a cause of action under each of the types of prohibited conduct; in this case, allegations of unlawfulness or unfairness.  Cel-Tech Commc's, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999); see also Gregory v. Albertson's, Inc., 128 Cal. Rptr. 2d 389, 392 (Cal. Ct. App. 2002) (affirming dismissal of UCL claim and stating that "[t]here are separate lines of authority construing each of [the] three terms" under the UCL).  In addition, allegations of prohibited conduct "must state with reasonable particularity the facts supporting the statutory elements of the violation."  Khoury v. Maly's of Cal., Inc., 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993)

---

[9]    Plaintiffs' Sur-reply also requests that the Court "re-deny Defendant's Motion to Dismiss with respect to Counts I, III, IV, and V."  (Sur-reply at 4.)  While the Court should dismiss the Complaint with prejudice, the Complaint does not, in any event, contain a Count V.

[10]   The Unfair Competition Law is codified in California Business and Professions Code section 17200 et seq.

(affirming dismissal of UCL claim because the complaint failed to identify a particular section of

the statutory scheme which was violated) (emphasis added); Gregory, 128 Cal. Rptr. 2d at 396

(following Khoury and holding allegations "too vague and conclusionary" to support a UCL

claim). Even if the Complaint sufficiently identifies any unlawful or unfair conduct -- and it

does not -- allegations underlying those assertions do not satisfy the "reasonable particularity"

pleading standard of Khoury. (Compl. ¶ 38.)

> **A.    Conclusory Allegations Of Breach Of Contract Are
> Insufficient To State A Claim Of "Unlawful" Conduct**

An "unlawful" business practice "is an act or practice, committed pursuant to

business activity, that is at the same time forbidden by law." Bernardo v. Planned Parenthood

Fed'n of Am., 9 Cal. Rptr. 3d 197, 222 (Cal. Ct. App. 2004) (emphasis added). Thus, to state a

claim for an "unlawful" business practice, a plaintiff must allege that the defendant violated some

law independent of the UCL. Klein v. Earth Elements, Inc., 69 Cal. Rptr. 2d 623, 625 (Cal. Ct.

App. 1997) ("While these doctrines do provide for civil liability upon proof of their elements

they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by

law."). In other words, to state a claim of unlawful conduct under the statute, a plaintiff must

allege some statutory or regulatory violation. S. Bay Chevrolet v. Gen. Motors Acceptance

Corp., 85 Cal. Rptr. 2d 301, 311 (Cal. Ct. App. 1999) ("unlawful" practices proscribed by the

UCL are those acts "'forbidden by law, be it civil or criminal, federal, state, or municipal,

statutory, regulatory, or court-made'").

As a matter of law, an allegation of breach of contract -- like the lone allegation

asserted here -- does not constitute unlawful conduct actionable under the UCL. Accuimage

Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003) (dismissing

UCL claim and stating that the "scope [of the statute] is restricted to violations of law, not

contract") (emphasis added); <u>see also</u> <u>Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.</u>, 319 F.

Supp. 2d 1059, 1074-75 (C.D. Cal. 2003) (summarily dismissing UCL claim on the ground that a

breach of contract is not unlawful conduct under the statute).

   The complaint here similarly fails and ought to be dismissed.  Plaintiffs' entire

case is premised upon the allegation that AIG SunAmerica may have breached the Policy.

(Compl. ¶¶ 19-20.)  At most, this constitutes a breach of contract and is inadequate to support a

claim for "unlawful" business practices.  <u>Accuimage</u>, 260 F. Supp. 2d at 954.

   Even if plaintiffs' allegation that AIG SunAmerica violated "procedures and

standards" could be interpreted to allege a violation of an underlying statute or regulation -- and

it cannot -- plaintiffs' pleading "[u]pon information and belief" a violation of unidentified

"procedures and standards" does not come close to satisfying the reasonable particularity

requirement.  (Compl. ¶ 20.); <u>Khoury</u>, 17 Cal. Rptr. 2d at 712.

### B. Conclusory Allegations Of "Unfairness" Fail To State A Claim

   For substantially the same reasons plaintiffs' allegations of "unlawful" conduct

fail, their allegations of "unfairness" also are inadequate.  The California Supreme Court has

defined "unfair" as "conduct that threatens an incipient violation of an antitrust law, or violates

the policy or spirit of one of those laws because its effects are comparable to or the same as a

violation of the law . . . ." <u>Cel-Tech</u>, 973 P.2d 527 at 544.  A finding of unfairness under the

UCL must be "tethered to some legislatively declared policy or proof of some actual or

threatened impact on competition." <u>Id.</u>  California courts have extended this definition to

encompass consumer actions, requiring that the alleged unfair conduct be "'tethered' to specific

constitutional, statutory or regulatory provisions." <u>Gregory</u>, 128 Cal. Rptr. 2d at 394-95 (noting

"a narrower interpretation" of unfair acts or practices in <u>all</u> UCL actions is justified by <u>Cel-Tech</u>);

<u>Churchill Vill., LLC v. Gen. Elec. Co.</u>, 169 F. Supp. 2d 1119, 1130 n.10 (N.D. Cal. 2000)

(extending the <u>Cel-Tech</u> "tethered" requirement because the "lack of distinction between competitor and consumer in the language of the UCL renders th[e] definition equally valid in the consumer context").

Plaintiffs have not attempted to identify any violation of constitutional, statutory or regulatory law.  Indeed, plaintiffs do not identify any violation whatsoever.  Instead, they purport to rely on the insufficient allegation that AIG SunAmerica might have violated some non-specific "procedures and standards."  (Compl. ¶ 20.)  Plaintiffs do not even identify what purported "procedures and standards" may have been disregarded, much less do so with the requisite reasonable particularity necessary to maintain a UCL claim.

## <u>CONCLUSION</u>

For all of the foregoing reasons, AIG SunAmerica's Motion For Judgment On The Pleadings should be granted, and the Complaint dismissed with prejudice.

11

Dated:  October 25, 2005                    Respectfully submitted,
        Boston, Massachusetts


                                          /s/  James R. Carroll
                                          James R. Carroll (BBO #554426)
                                          Michael S. Hines (BBO #653943)
                                          SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP
                                          One Beacon Street
                                          Boston, Massachusetts 02108
                                          (617) 573-4800

                                          Counsel for Defendant
                                          AIG SunAmerica Life Assurance Company

## CERTIFICATE OF SERVICE

      I, Michael S. Hines, hereby certify that on October 25, 2005, I caused a true copy of the foregoing Memorandum Of Law In Support Of Defendant AIG SunAmerica's Motion For Judgment On The Pleadings to be served electronically via the Court's Electronic Filing System upon counsel for plaintiffs, John Peter Zavez.

Dated: October 25, 2005                    /s/  Michael S. Hines
                                            Michael S. Hines

12

# EXHIBIT A

1    UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF MASSACHUSETTS

2
                                      Civil Action
3                                     No. 05-10994-WGY

4

5    * * * * * * * * * * * * * * * *  *
                                      *
6    NANCY BROOKS and JOAN SILVERMAN, *
                                      *
7           Plaintiffs,               *
                                      *
8    v.                               *  **MOTION HEARING**
                                      *
9    AIG SUNAMERICA LIFE ASSURANCE    *
     COMPANY,                         *
10          Defendant.                *
                                      *
11   * * * * * * * * * * * * * * * *  *

12

13        BEFORE:   The Honorable William G. Young,
                         District Judge

14

15

16   APPEARANCES:

17
          ADKINS, KELSTONE AND ZAVEZ, P.C.
18   (By John P. Zavez, Esq.), 90 Canal Street, 5th
     Floor, Boston,  02114, on behalf of the Plaintiffs

19

20        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
     (By James R. Carroll, Esq. and Michael S. Hines,
21   Esq.), One Beacon Street, 31st Floor, Boston,
     Massachusetts 02108, on behalf of the Defendant

22

23
                         Suffolk University Law School
24                       Boston, Massachusetts

25                       October 5, 2005

1    THE CLERK:  Civil Action 05-10994, Brooks v. AIG.

2    (Whereupon the Court and the Clerk conferred.)

3    THE COURT:  Would counsel identify themselves.

4    MR. ZAVEZ:  Good afternoon, your Honor.  Attorney

5    John Zavez for the plaintiffs, Ms. Silverman and Ms. Brooks.

6    MR. CARROLL:  James Carroll for AIG SunAmerica,

7    your Honor.

8    THE COURT:  This is the defendant's motion to

9    dismiss.  And Mr. Zavez, let's start with you.

10    I recently had occasion to write on this issue of

11    good faith and fair dealing and as I look at your complaint

12    I don't see anything sufficient to carry the additional

13    elements which at least in my Christensen decision I say are

14    necessary to a breach of the implied duty of good faith and

15    fair dealing.  So why don't you start there.

16    MR. ZAVEZ:  Your Honor, I guess the best way for us

17    to describe it is that, from our perspective the breach of

18    implied duty of good faith and fair dealing is simply an

19    alternative to the breach of contract claim.  We believe

20    that the contract clearly required that the defendant

21    calculate increases in costs of insurance rates in

22    accordance with documents that were or should have been on

23    file with the Massachusetts Division of Insurance.  And then

24    there's a second requirement that even if they're calculated

25    in accordance with that that they can't go above a certain

1   ceiling for each year.

2            So again our breach of contract claim is basically

3   that they failed to calculate them in accordance with the

4   documents that should have been on file.  If for some reason

5   the Court believes that's not part of the contract we

6   concede that they're under the ceiling but we still think

7   that even though they had that discretion to go up to the

8   ceiling that they abused their discretion by raising the

9   rates beyond what was necessary to support the ongoing

10  policies.

11          **THE COURT:**  Where's the, where's the duty that they

12  would have violated?  You say they abused their discretion.

13  In a contract case they either perform or pay damages.  So,

14  if there is no breach of the contract it seems you lose

15  across the board.  If there is a breach of a contract you

16  get contract damages.  And, I mean, I appreciate your candor

17  saying it's an alternative to the contract claim.  But as I

18  wrote in Christensen everybody's pleading a separate count

19  for the breach of this implied covenant.  I have real

20  trouble with that.  I thought Massachusetts still followed

21  the bad man theory of contracts, either you perform or you

22  pay damages.  But you've got to win on the contract count to

23  get contract damages, it seems to me.

24          **MR. ZAVEZ:**  Well, your Honor, I mean, I guess I

25  would cite Anthony's Pier 4 anyway.  The SJC has made clear

1   that you have basically either or. There was no, in Pier 4

2   there was no holding that the, that the defendant Anthony's

3   had abused its discretion to ask -- Anthony's had discretion

4   under the contract to tell the developer to approve or

5   disapprove a plan. What the developer alleged and the trial

6   court found as a fact was that Anthony's used that

7   discretion in order to try to extort more money out of them.

8   So there was, there was no breach of contract per se. But

9   of course --

10          **THE COURT:** Precisely.

11          **MR. ZAVEZ:** -- by the way, what's in that contract

12   is a duty to play fair.

13          **THE COURT:** Right. Precisely. Where's the use of

14   the contract to leverage some other economic advantage?

15          **MR. ZAVEZ:** Your Honor, by, by increasing the cost

16   of insurance rates beyond what were required, although still

17   under that cap, so by exercising their discretion and

18   raising them too high what they do, what the insurance

19   company, what the practical effect of that is it makes the

20   insurance too expensive, it makes people have to pay more

21   for it than they would otherwise have to pay. So, in a

22   sense their damages are somewhat easy to determine with

23   money and --

24          **THE COURT:** But -- all right, I hear the argument.

25          All right, Mr. Carroll, how about the other matters

1    here, the other matters it looks to me -- this is a motion

2    to dismiss after all.  Doesn't he get past a motion to

3    dismiss here?

4         **MR. CARROLL:**  I would respectfully suggest not,

5    your Honor, and particularly with respect to the breach of

6    contract claim.  If that falls the entire case should full.

7    And it should fall not simply because of the quite

8    intelligent concession that the amounts charged were below

9    the maximum amounts provided for in the contract but because

10   the alternative theory of breach, that is to say, that

11   somehow the defendant failed to comply with any procedures

12   and standards on file with the Division of Insurance, is an

13   empty allegation.  Our motion challenges that pleading by

14   saying specify, give us notice, what procedures and what

15   standards are you talking about.

16        Now, it's a question I can ask on a motion to

17   dismiss because to the best of our knowledge we know the

18   answer is none.  There is no requirement in the contract

19   that any procedures and standards exist.  The language

20   merely says that if they do exist we'll comply with them.

21   There's no articulation in the complaint, nor, I submit,

22   could there be, that there has been any such failure to

23   comply with any procedure or standard, and indeed there's no

24   articulation whatsoever as to what those procedures or

25   standards are.

1    So, respectfully, we don't have notice of what it

2  is we have done to breach the, breach the contract.  So,

3  independent of the failure of any additional allegation

4  about undue, undue economic advantage, there's no notice in

5  this complaint as to what it is we have failed to do.

6    **THE COURT:**  But your, your quarrel is with the

7  level of definitiveness of the pleading.  He's pleaded a

8  breach of contract.  He says you have broken the contract.

9  He's not conceding anything.  He says we had a contract, you

10  broke it, pay damages.  That's the usual sufficient, I would

11  think, against a motion to dismiss.  You bring a prompt

12  motion for summary judgment and if he can't get around it

13  that's an end of it, it would seem to me.

14    What's wrong with that?  It's like you're trying to

15  get a more definite statement under the guise of a motion to

16  dismiss.

17    **MR. CARROLL:**  What's wrong with it is that there's

18  no basis for the allegation that there's been a breach of a

19  procedure or standard.  Under the Hasbro ruling in the First

20  Circuit as I read it, your Honor, he's got to put us on

21  notice of what we've done wrong.

22    The opposition to the motion is very candid.  It's

23  very candid.  And the plaintiff does not know.  The

24  plaintiff does not know what the standard or procedure is.

25  The plaintiff does not know if the standards or procedures

1    even exist or ever existed.  There's no need for a more

2    definite statement by virtue of a motion to dismiss because

3    there's no standards or procedures alleged to defend

4    against.  So, whether you call it a motion for a more

5    definite statement or a motion to dismiss, we respectfully

6    submit that notice pleading at least requires some statement

7    of what the contract term is that's been breached such that

8    we can at least decide what to do about it.  Should we

9    settle with it?  Well, maybe we should if we had a sense of

10   what it is the allegation was.  We believe that there's no

11   such standard in place, there was no such standard required

12   to be in place.  And it seems to us that you shouldn't be

13   able to state a claim by using information and belief as a

14   substitute for some substantive allegation of breach.

15            THE COURT:  Would you jump to the California

16   business practices law.  What's the problem there?

17            MR. CARROLL:  The California business practices

18   law --

19            THE COURT:  Unfair competition is its proper -- go

20   ahead.

21            MR. CARROLL:  Two problems.  The first is it's time

22   barred.  The damages in this case are alleged to have

23   occurred in excess of four years from when the complaint was

24   filed.

25            The second problem is that statute, and I know your

1    Honor has written on it and is well aware, requires either

2    some unlawful activity or some unfair activity. And again I

3    would say, your Honor, that falls as well with the breach of

4    contract claim. If there has been no breach of contract, if

5    there are no procedures and standards allegedly violated

6    there can hardly be any unfair activity and there has

7    certainly been nothing unlawful done.

8              **THE COURT:** All right. Thank you.

9              Here's the order of the Court. Count II alleging a

10   breach of the implied covenant of good faith and fair

11   dealing is, the motion to dismiss is allowed. The motion to

12   dismiss the other counts is denied without prejudice to its

13   renewal -- well, without prejudice to addressing these same

14   issues on a motion for summary judgment. However, the

15   plaintiffs are directed within ten days of the date of, from

16   today's date to file a supplemental pleading identifying

17   with some specificity the provision or provisions of the

18   contract alleged to have been breached and the manner in

19   which they were breached.

20             That's the order of the Court.

21             **MR. CARROLL:** Thank you, your Honor.

22             **THE COURT:** Thank you.

23             **MR. ZAVEZ:** Thank you, your Honor.

24             (Whereupon the matter concluded.)

25

1

# C E R T I F I C A T E

2

3

4           I, Donald E. Womack, Official Court Reporter for

5   the United States District Court for the District of

6   Massachusetts, do hereby certify that the foregoing pages

7   are a true and accurate transcription of my shorthand notes

8   taken in the aforementioned matter to the best of my skill

9   and ability.

10

11

12

13

14           _____
                    DONALD E. WOMACK
15               Official Court Reporter
                     P.O. Box 51062
16           Boston, Massachusetts 02205-1062
                 womack@megatran.com
17

18

19

20

21

22

23

24

25