UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY BROOKS AND JOAN SILVERMAN

                            :

             Plaintiffs,        Civil Action
                        :  No. 05-10994-WGY

      v.

                            :

AIG SUNAMERICA LIFE ASSURANCE
COMPANY,                            :

            Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT
<u>AIG SUNAMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**<u>Preliminary Statement</u>[1]**

The Court's October 5, 2005 Order required plaintiffs to file a "supplemental pleading identifying with some specificity the provision or provisions of the contract alleged to have been breached and the manner in which they were breached."[2]  While plaintiffs have now moved to amend so as to file a pleading as ordered (<u>see</u> Docket No. 23), their proposed amended complaint nowhere does what was required: allege <u>what</u> "procedures and standards" plaintiffs are basing their case on, and allege <u>how</u> such "procedures and standards" were breached.  And it is now beyond doubt that plaintiffs have no idea what those "procedures and standards" are.  Neither does AIG SunAmerica.  How can a case proceed for breach of "procedures and standards" if plaintiffs cannot even identify what those "procedures and standards" are, let alone

---

[1]   Capitalized terms herein shall have the same meaning as in the Memorandum Of Law In Support Of Defendant AIG SunAmerica's Motion For Judgment On The Pleadings (Docket No. 16), which is cited herein as "Initial Brief at __."

[2]   Trans. at 8:17-19 (attached to Initial Brief as Exhibit A).

say anything whatsoever as to "the manner in which they were breached?" (Trans. at 8:18-19.) AIG SunAmerica respectfully submits that the Court's October 5, 2005 Order could only have been intended to require fair notice to defendant of the alleged breach. Plaintiffs have failed to do so (again).

Instead of complying with the Court's Order and alleging <u>what</u> the "procedures and standards" actually say, plaintiffs' opposition[3] postulates two theories as to *where* the "procedures and standards" *might* be found (but remains silent as to *what* they say). Those theories are beside the point and, in any event, are mistaken. <u>First</u>, plaintiffs' reliance on the Policy provision concerning the calculation of cash value (Policy ¶ 13) is misplaced. As the Opposition makes plain, that provision is wholly inapplicable here, and plaintiffs' effort to force a nexus between the calculation of cash value and changes in monthly COI rates only underscores their inability to identify the "procedures and standards" upon which they rely. <u>Second</u>, plaintiffs' citation to a Massachusetts regulation is also unpersuasive, as that regulation concerns reserve liabilities for guaranteed death benefits, not changes in monthly COI rates.

Similarly deficient is plaintiffs' attempt to describe <u>how</u> the unidentified "procedures and standards" were breached. Unable to say what the "procedures and standards" are or how they were breached, plaintiffs instead make the specious assertion that AIG SunAmerica "admits breaching" the Policy. (Opp. at 2.) Of course, AIG SunAmerica made no such admission, and plaintiffs' claim to the contrary is merely a last ditch attempt to relieve themselves of pleading <u>what</u> the "procedures and standards" are and <u>how</u> AIG SunAmerica breached them. (Opp. at 2-3.)

---

[3]   Plaintiffs' Opposition To Defendants' Motion For Judgment On The Pleadings at 2 (Docket No. 21) (the "Opposition") (cited as "Opp. at __.").

**Reply Points**

**1.    Plaintiffs Still Do Not Identify The "Procedures and Standards" Upon Which They Base Their Entire Case**

Unable to identify the "procedures and standards" with any specificity, plaintiffs instead argue that those unidentified "procedures and standards" (and plaintiffs clearly have no idea what such "procedures and standards" say) must be contained in either (i) the statement of cash of values identified elsewhere in the Policy (see Policy ¶ 13) or (ii) an actuarial memorandum contemplated by a Massachusetts regulation. (Opp. at 2-4.) As the Opposition makes plain, however, both contentions are without merit and fail as a matter of law.

**a.    Plaintiffs' Reliance On The Cash Value Provision Of The Policy Is Misplaced**

Plaintiffs first argue that the "procedures and standards" referenced in ¶ 14 of the Policy must be the same as the "statement of the method of calculation of [cash] values" referenced in ¶ 13 of the Policy and, therefore, AIG SunAmerica was required to make such a filing because the Policy "promised" it would do so. (Opp. at 3.) Plaintiffs' conclusion, however, is predicated upon a series of nonsensical inferences and assumptions, which are unsupported by the plain language of the Policy. (Id.) Plaintiffs' argument proceeds as follows: (i) the determination of the cash value of the Policy includes a subtraction of the monthly deduction, (ii) the determination of the monthly deduction includes the cost of insurance of the Policy, (iii) therefore calculation of cash value includes the cost of insurance and (iv) therefore any change in monthly COI rates must be in accordance with the statement of calculating cash value. (Opp. at 3-4.) Plaintiffs' argument fails for at least two independent reasons.

First, the calculation of the cash value of the Policy (Policy ¶ 13) has no nexus whatsoever to the change in monthly COI rates. (See Initial Brief at 6-7.) The Opposition utterly ignores that the Cost of Insurance (which is not at issue in this case) and the alleged

3

changes in monthly COI rates (which is at issue in this case) are <u>different</u>.  (<u>See</u> Policy at ¶ 14

(COI = net amount of risk *multiplied by* the monthly cost of insurance rate).)  Accordingly,

plaintiffs' assumptions in (ii) and (iii) above (<u>i.e.</u>, that the "'monthly deduction' includes COI"

and "calculation of cash value necessarily requires calculation of COI") simply miss the point.

(Opp. at 3.)  Those assumptions say nothing about the <u>change</u> in the monthly COI rate.

     <u>Second</u>, plaintiffs' interpretation of the Policy makes no sense.  If the "procedures

and standards" in ¶ 14 of the Policy were the same as the statement of cash value in ¶ 13 of the

Policy, then why would ¶ 14 not just reference the statement of cash value?  There is no need for

plaintiffs' assumption-after-assumption analysis.  A common sense reading of the Policy

indicates that since ¶ 14 does not identify the statement of cash value as the "procedures and

standards," then that statement of cash value is simply not what is contemplated by the Policy.

Indeed, far from "promis[ing]" that such "procedures and standards" would be filed, there is

<u>nothing</u> in the Policy that mandates such a filing, and ¶ 14 simply states that to the extent such

"procedures and standards" do in fact exist, then AIG SunAmerica will abide by them.

     **b.**    **<u>Plaintiffs' Reliance On The Calculation Of Reserve Liabilities Similarly Fails</u>**

     For substantially the same reasons, also insufficient is plaintiffs' unsupported

reliance on a Massachusetts regulation requiring a company to file an actuarial memorandum

describing the determination of <u>reserve</u> <u>liabilities</u> for guaranteed death benefits.  (Opp. at 4

(citing 211 Mass. Code Regs. 95.06 (2004)).)  The plain language of that regulation simply has

nothing to do with how AIG SunAmerica calculates changes in monthly COI rates.  (<u>See</u> Initial

Brief at 7-8.)  Even if that actuarial memorandum has a cost of insurance component, plaintiffs

again ignore that cost of insurance is <u>different</u> than the change in monthly COI rates.  (Opp. at 4.)

Plaintiffs' failure to distinguish between those terms is dispositive.

4

**2.    Plaintiffs' Assertion That AIG SunAmerica
        "Admits Breaching" The Policy Is Specious**

Plaintiffs also cannot satisfy the Court's directive that they identify "the manner in which [the Policy] was breached." (Trans. at 8:18-19.) Rather than attempting to plead a breach (which they cannot do), plaintiffs make the false assertion that AIG SunAmerica somehow "admits breaching" the Policy. (Opp. at 2.)

Plaintiffs' citation to AIG SunAmerica's motion to dismiss briefing does not support their "admission" argument. (Id.) AIG SunAmerica argued only that the Complaint does not give it notice of what plaintiffs allege to be breached: "[AIG SunAmerica] does not know of any document that constitutes the unidentified 'procedures and standards' upon which plaintiffs base their entire Complaint."[4]  AIG SunAmerica's argument is not (and cannot be) an admission that it breached anything. Simply put, AIG SunAmerica has been stymied in trying to ascertain what plaintiffs allege was breached!

First, the Complaint (and plaintiffs' argument in opposition to AIG SunAmerica's motion to dismiss) is based upon the mistaken contention that the Policy (which was issued during the Rehabilitation Period) does not control at all, but instead the original policy issued in 1984 controls because at the conclusion of the Rehabilitation Period the Policy somehow reverted back to the original policy. (See Compl. ¶ 17 ("the temporary restructuring of the Mutual Benefit Block of Policies into common form policies expired and the original terms of the Class members' policies controlled again).)[5]  In its Reply Brief, AIG SunAmerica

---

[4]    Reply Memorandum Of Law In Further Support Of Defendant AIG SunAmerica's Motion To Dismiss at 3-4 (Docket No. 10) ("Reply Brief") (emphasis added).

[5]    See also Plaintiffs' Opposition To Defendant's Motion To Dismiss at 8 (asserting that the "procedures and standards" would not be on file at the Massachusetts Division of Insurance

*(cont'd)*

demonstrated that plaintiffs' argument was erroneous, as the original policy did not even contain the language plaintiffs rely upon.  (Reply at 4-5.)  Accordingly, because the Complaint relies upon "procedures and standards" that under plaintiffs' theory do not even exist, AIG SunAmerica does not (and could not) know what the Complaint is referring to.[6]

       Second, plaintiffs' argument that the unidentified "procedures and standards" were required to be filed by the Policy and also by a Massachusetts regulation was first asserted in the Sur-reply brief, after AIG SunAmerica's alleged "admission."  Notwithstanding that neither the Policy nor the Massachusetts regulation require any such filing, plaintiffs do not argue that no such filing was ever made.  Nor could they.  Further, AIG SunAmerica did not "admit" to not following either (i) the "statement of the method of calculation of [cash] values" referenced in ¶ 13 of the Policy or (ii) the actuarial memorandum contemplated by 211 Mass. Code Regs. 95.06 (2004).  AIG SunAmerica argued only that it does not know what the Complaint alleges are the "procedures and standards."  And it still does not know.  Indeed, plaintiffs concede that they too do not know what the "procedures and standards" are (even though the entire case hinges on them).  The Court's Order was plainly intended to require plaintiffs to specify the basis for the case, and plaintiffs have not done so.

_____

*(cont'd from previous page)*
    because the policy was purchased in 1984 and the Massachusetts Division of Insurance "rarely retains filed documents beyond 7 years.").

[6]   Plaintiffs now seek leave to file an amended complaint.  (See Plaintiffs' Motion To Amend The Complaint) (Docket No. 23).  Tellingly, the proposed amended complaint abandons all allegations concerning plaintiffs' theory that the Policy reverted to the originally issued policy at the close of the Rehabilitation Period.  (See id.)

**3.     The Face Of The Complaint Demonstrates Why This Case Makes No Sense**

The Complaint concedes -- as it must -- that AIG SunAmerica charged <u>far</u> <u>less</u> than the maximum monthly COI rate permitted by the express terms of the Policy.  (Compl. ¶ 21.) Indeed, during the relevant time period (<u>i.e.</u>, 1999 through 2002) the monthly COI rates were <u>more than 30%</u> below the maximum allowed under the Policy:

| Year | Monthly COI Rate (*See* Compl. ¶ 18) | Maximum Monthly COI Rate (*See* Policy at 15)[7] | % Difference |
|---|---|---|---|
| 1999-2000 | $6.52 | $9.47 | 31.2% |
| 2000-2001 | $7.12 | $10.42 | 31.7% |
| 2001-2002 | $7.95 | $11.47 | 30.7% |

In light of the conceded fact that plaintiffs were charged far less than the contractual maximum, nothing about this case makes sense.

### Conclusion

For all of the foregoing reasons, AIG SunAmerica's Motion For Judgment On The Pleadings (Docket No. 15) should be granted in its entirety.

---

[7]  Mr. Silverman's date of birth was August 30, 1917; he was therefore 82 years old when the monthly COI rate for his age category was allegedly increased in 1999.

Dated:  November 21, 2005            Respectfully submitted,
         Boston, Massachusetts


                                      /s/  James R. Carroll
                                     James R. Carroll (BBO #554426)
                                     Michael S. Hines (BBO #653943)
                                     SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                     One Beacon Street
                                     Boston, Massachusetts 02108
                                     (617) 573-4800

                                     Counsel for Defendant
                                     AIG SunAmerica Life Assurance Company

                      **CERTIFICATE OF SERVICE**

        I, Michael S. Hines, hereby certify that on November 21, 2005, I caused a true
copy of the foregoing Reply Memorandum Of Law In Further Support Of Defendant AIG
SunAmerica's Motion For Judgment On The Pleadings to be served electronically via the Court's
Electronic Filing System upon counsel for plaintiffs, John Peter Zavez.

Dated: November 21, 2005                 /s/  Michael S. Hines
                                         Michael S. Hines