**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(BOSTON)**

| | |
|---|---|
| **Nancy Brooks and Joan Silverman**, as Trustees of the Irrevocable Trust of Donald L. Silverman and as Executrices for the Estate of Donald L. Silverman | |
| Plaintiffs, | Civil Action No. 05-10994-WGY |
| v. | |
| **AIG SunAmerica Life Assurance Company**, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

Because an MGLC 93A class claim can be certified under less stringent requirements than non-93A claims, the Class has been divided into two subclasses: the Rule 23 Subclass (all claims including the MGLC 93A claim to be certified under Fed. R. Civ. P. 23) and the 93A Subclass (alternatively, the MGLC 93A claim certified under MGLC 93A, §9). The Rule 23 Subclass consists of all persons (regardless of state of residence) who (1) purchased a life insurance policy from Mutual Benefit Life, (2) converted their policy to a common form policy during the rehabilitation of Mutual Benefit Life and (3) following that rehabilitation, had their policies assumed by SunAmerica. The 93A Subclass consists of all Massachusetts residents who (1) purchased a life insurance policy from Mutual Benefit Life, (2) converted their policy to a common form policy during the rehabilitation of Mutual Benefit Life and (3) following that rehabilitation, had their policies assumed by SunAmerica. Excluded from each Subclass are any of Defendant's directors, officers, employees, agents, attorneys, successors and/or assigns.

**BACKGROUND**

Nancy Brooks and Joan Silverman are trustees of the Irrevocable Trust of Donald L. Silverman and, as his daughters, executrices of the Estate of Donald L. Silverman. Prior to his death in June 2001, Mr. Silverman was a resident of Swampscott, Massachusetts and the insured under Mutual Benefit Life of New Jersey ("Mutual Benefit Life") Policy AL101958, which had a Policy Issue Date of May 1, 1984. At the time of Mr. Silverman's death in June of 2001, the Irrevocable Trust of Donald L. Silverman owned Mutual Benefit Life Policy AL101958. Defendant AIG SunAmerica Life Assurance Company ("SunAmerica"), an Arizona corporation with a corporate headquarters and principle place of business at 1 SunAmerica Center, Los Angeles, CA 90067, is the successor in interest to Mutual Benefit Life.

Up until approximately 1994, Mutual Benefit Life was a solvent mutual life insurance company that sold, among other insurance products, "flexible premium" universal life insurance policies such as the one Mr. Silverman purchased in 1984. On or about July 16, 1991, Mutual Benefit Life was placed in rehabilitation by the New Jersey Commissioner of Insurance at least in part because of questions concerning its ongoing ability to pay claims. In May of 1994, substantially all of Mutual Benefit Life's assets and liabilities were transferred to MBL Life Assurance Corporation ("MBL Life Assurance") under a rehabilitation plan adopted by the New Jersey Commissioner of Insurance and approved by the New Jersey Superior Court (the "Rehabilitation Plan"). Mutual Benefit Life policyholders such as Mr. Silverman were given the choice of either opting out of the Rehabilitation Plan or opting into the Plan having their policies and transferred to MBL Life Assurance. Mr. Silverman opted into the Rehabilitation Plan.

On June 30, 1999, pursuant to the Rehabilitation Plan, Anchor National Life Insurance Company ("Anchor"), a SunAmerica company, formally acquired the block of policies that MBL

Life Assurance had acquired from Mutual Benefit Life (the "Mutual Benefit Block of Policies"), including Mr. Silverman's policy. Anchor and/or SunAmerica have administered the Mutual Benefit Block of Policies, including Mr. Silverman's policy, at all times thereafter. (Anchor and SunAmerica are sometimes referred to collectively herein as "SunAmerica.").

From the time it acquired them in 1999 until at least 2002, SunAmerica has increased the COI rates on the Mutual Benefit Block of Policies each year in the following manner (the "COI Rate Increases"):

| Year | COI Increase per $1000 per month ($) | COI Increase (%) |
|---|---|---|
| 1999-2000 | From $5.14 to $6.52 = $1.38 | 24% |
| 2000-01 | From $6.52 to $7.12 = $0.60 | 9% |
| 2001-02 | From $7.12 to $7.95 = $0.83 | 11% |

However, SunAmerica violated one of the two criteria that it must meet before raising COI Rates. First, as the controlling policy language in the Mutual Life Block of Policies states, **"Any change in [COI] rates will be in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which the policy is delivered."** (Emphasis added). Second, any COI Rate Increases had to be less than the maximum guaranteed rates set out in the insurance policy's COI Rate Table. However, the COI Rate Increases were **NOT** made "in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which" any of the Mutual Life Block of Policies were delivered. *See* Defendant's Reply at pages 2, 3-4 (AIG SunAmerica "does not know of any document that constitutes the unidentified 'procedures and standards' upon which plaintiffs base their entire Complaint."). As a result, the COI Rate Increases are in breach of the terms of the policy language of the Mutual Life Block of Policies and are therefore invalid even if the COI Rate

Increases were less than the guaranteed maximum increases set out in the policy's COI Rate Table.

SunAmerica fraudulently concealed that it had made the COI Rate Increases in violation of the relevant insurance policy's terms by misrepresenting to the named plaintiffs and their agents several times between 2001 and the present that the Rehabilitation Plan authorized it to make the COI Rate Increases. To the contrary, the truth, which SunAmerica knew or should have known, is that the COI Rate Increases were governed by the insurance policy language quoted above in ¶ 19. In addition, plaintiffs did not know, and in the exercise of reasonable diligence could not have known, whether SunAmerica made the COI Rate Increases in violation of the terms of their policy because SunAmerica has failed to disclose to them the method by which it calculates COI Rate Increases and the information is not available anywhere else.

**ARGUMENT**

In *Lee v. Allstate Life Ins. Co.*, 2005 WL 2436357 (Ill App 2 Dist 2005), the Illinois appeals court recently affirmed the certification of a class bring claims almost identical the claims in our case: "In their one-count class action complaint for contract damages, plaintiffs filed the present action against Allstate on March 12, 2003. Plaintiffs' complaint alleged that Allstate breached its contractual obligations by improperly increasing the COI rates on its life insurance policies in 1992. Specifically, plaintiffs alleged that Allstate failed to comply with the policy provision that requires Allstate to base the COI rates solely on the insured's sex, attained age, and payment class. Plaintiffs further claimed that Allstate intentionally misled its policyholders regarding the justification for the COI increase. Plaintiffs alleged that Allstate raised the COI rates to increase profits and improperly recoup deferred acquisition costs on other

life insurance products. In sum, plaintiffs alleged that Allstate unlawfully increased the COI charges on the policies of the proposed class of policyholders."

## I. THE CLASS ACTION DEVICE IS A FAVORED MECHANISM.

The United States Supreme Court has repeatedly emphasized the importance of the class action in permitting representative plaintiffs "to 'vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.'" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.11 (1981) (*quoting Deposit Guaranty National Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338 [1980]). In determining whether a class action is proper, a court must focus on whether the named plaintiff has satisfied the requirements of Rule 23. It should not inquire whether the named plaintiff states a claim or will likely prevail on the merits. *See Eisen v. Carlisle,* 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). Thus, "the decision to certify a class . . . must be made without inquiry into the merits of plaintiffs' claims." *In re Bank of Boston Corp. Securities Litigation*, 762 F.Supp. 1525, 1530 (D. Mass. 1991) (citing *Eisen*, 417 U.S. at 177)).

## II. THIS CASE MEETS THE REQUIREMENTS OF RULE 23(A).

Plaintiffs meet the requirements of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- as shown below.

### A. Numerosity Is Satisfied.

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." **Standard for joinder.** Massachusetts state and federal courts routinely certify classes with far fewer members than the Subclasses here. *See Brophy v. School Committee of*

*Worcester*, 6 Mass. App. Ct. 731, 736, 383 N.E.2d at 524 (1978) (certifying class of 230 persons); *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, 1987 WL 15884 at *7 (D. Mass.) (certifying class having a maximum of 122 members); *Holton v. L.F. Rothschild, Unterberg, Towbin,* 118 F.R.D. 280, 281-82 (D. Mass. 1987) (50 or 60 members is "sufficiently large" for a class). It is well established that a court may make "common sense assumptions in order to support a finding of numerosity." *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987).

According to Mutual Benefit Life Insurance Company's Information Statement Plan of Rehabilitation and Related Documents, dated 24 January 1994 (the "Statement"), "when placed in Rehabilitation, MBL had . . . more than 400,000 individual policyholders." Statement at page 5. Defendant has already admitted that it did not follow their regulatory filings in making COI Rate Increases for these 400,000 policyholders, so numerosity is satisfied.

**B. Commonality Is Met.**

Rule 23(a)(2) requires that there be common questions of law and fact present with respect to Class members, but does not require that every question be common. *See Margaret Hall Foundation, Inc.*, *supra* at *2 ("Rule 23(a)(2) only requires the existence of one issue common to the entire class.") (citations omitted). In *Fletcher v. Cape Cod Gas Co.*, 394 Mass. 595, 477 N.E.2d 116 (1985), the Supreme Judicial Court recognized that federal courts have "given permissive application to the commonality requirements." 394 Mass. at 606, 477 N.E.2d at 123 (citations omitted).

Here, plaintiffs allege a common course of action by defendant against the members of both Subclasses. The common questions of law and fact are:

a. whether defendant increased COI rates in violation of the terms of the relevant insurance contracts;

b. whether defendant's conduct in increasing COI rates violated state DOI Regulations and/or consumer protection statutes;

c. whether defendant's failure to adequately disclose the manner in which it had calculated increases in COI rates constitutes a separate and distinct violation of state consumer protection statutes;

d. the measure of damages by which defendants' conduct injured all members of the Class; and

e. whether the Class is entitled to injunctive relief as a result of defendant's continuing conduct.

Because the evidence supporting these issues will be the same for each Class member, commonality is met.

**C. Typicality Is Present.**

"[T]he burden on plaintiffs in proving typicality is not 'very substantial.'" *Abelson v. Strong*, 1987 WL 15872 at *2 (D. Mass. 1987) (citations omitted). As Judge Keeton explained:

> Plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members . . .. The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs.

*Randle v. Spectran*, 129 F.R.D. 386, 391 (D. Mass. 1988) (citations omitted); *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991) (typicality requirement satisfied when "[1] plaintiff[s'] injuries arise from the same events or course of conduct as do the

injuries that form the basis of the class claims and [2] the plaintiff[s'] claims and those of the class are based on the same legal theory.") (citations omitted).

Plaintiffs' claims are typical of – if not identical to – the claims of the subclass members they seek to represent. Plaintiffs claim that they were damaged when defendant made unauthorized COI Rate Increases to their policies, and bring a class action on behalf of all former Mutual Benefit Life policyholders who were damaged by the same unauthorized COI Rate Increases.

**D. There Is Adequacy of Representation.**

The two-part adequacy test of Fed. R. Civ. P. 23(a)(4) requires "'(1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991) (*quoting Andrews v. Bechtel Power Corp*., 780 F.2d 124, 130 (1st Cir. 1985)).

Each of these elements is satisfied here. With respect to the first requirement, Plaintiffs have no interest antagonistic to that of the subclass that each seeks to represent because their claims are identical to the claims of the Class. Therefore, they will advance the claims of the Class by advancing their own claims. With respect to the second requirement, Plaintiffs are committed to the vigorous prosecution of this action, and have retained counsel who are thoroughly experienced in many different types of class action litigation before state and federal courts and who have the ability and willingness to protect the interests of the Class. Plaintiffs' attorneys are highly skilled and experienced practitioners who specialize in class action litigation, and are highly committed to the vigorous prosecution of this action. *See* First Declaration of Attorney John Peter Zavez, dated 14 December (containing AKZ firm resume).

## III. THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED.

The Court should certify the Rule 23 Subclass under Rule 23(b)(2) because SunAmerica "has acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In our case, SunAmerica has acted on grounds generally applicable to the Rule 23 Subclass by making unauthorized COI Rate Increases. The Rule 23 Subclass is therefore entitled to equitable relief in the form of (a) restitution and disgorgement of all earnings, profits, compensation and benefits obtained by SunAmerica as a result of such unfair and/or unlawful business practices and (b) an injunction prohibiting SunAmerica from further increasing COI Rates in the future.

## IV. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED.

Rule 23(b)(3) requires that (1) "the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A. Common Questions Predominate Over Individual Questions.

In our case, common questions of law and fact predominate over individual issues because virtually all of the liability-related issues are common to the Class. *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) (predominance met where most but not all issues are common to the class); *Margaret Hall*, 1987 WL 15884 at *4 (predominance established where claims arose from a common nucleus of operative facts).[1]

---

[1] "In all events, the fact that an issue has been resolved on [judgment on the pleadings] does not remove it from the predominance calculus. A certification decision is still necessary to determine whether the prior resolution carries res judicata effect with respect to purported class members. Thus, the district court did not err by taking into account the common nucleus of operative facts and issues, even though certain of these already had been resolved, when it was deciding whether to certify the class." *Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 299 (1st Cir. 2000).

To summarize, common issues of law and/or fact predominate here because virtually every key issue can be determined on a class-wide basis:

| Questions of Law or Fact | How Determined |
|---|---|
| **Count I: Contract Claim** | |
| D promised to follow regulatory filings in making COI Rate Increases. | Determined on a class-wide basis. |
| D breached that promise. | Determined on a class-wide basis. |
| Breach damaged policyholders. | Determined on a class-wide basis. |
| | |
| **Count II: Violation of MGLC 93A** | |
| Ps made demand. | Determined on a class-wide basis. |
| D failed to make reasonable offer. | Determined on a class-wide basis. |
| D engaged in trade or commerce. | Determined on a class-wide basis. |
| D committed unfair or deceptive acts. | Determined on a class-wide basis. |
| D acted willfully and knowingly. | Determined on a class-wide basis. |
| Violation damaged 93A Subclass. | Determined on a class-wide basis. |
| Damages should be doubled or trebled. | Determined on a class-wide basis. |
| Ps entitled to attorneys' fees. | Determined on a class-wide basis. |
| | |
| **Count III: Violation of CA Act** | |
| D's conduct is unlawful or unfair. | Determined on a class-wide basis. |
| D's conduct emanated from Corporate HQ. | Determined on a class-wide basis. |
| D holds ill-gotten gains belonging to Ps. | Determined on class-wide basis. |
| Ps entitled to injunction and/or restitution. | Determined on a class-wide basis. |
| Ps entitled to attorneys' fees. | Determined on a class-wide basis. |

There are no individual issues with respect to damages because they can be calculated on a class-wide basis under the following formula:

- All monies paid for COI Rate Increases not done in accordance with the methodology on file with DOI of the state where the policy was issued, *i.e.*,
  - All unauthorized COI Rate Increases ($/$1000 of coverage) multiplied by
  - Amount of coverage ($1000) multiplied by
  - Number of Class members;
- Plus pre and/or post judgment interest;
- Plus doubling or trebling and/or any punitive damages where allowed;

- Plus attorneys' fees and costs.

*See, e.g., Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D. Pa. 1979) (calculating damages by computing difference between amounts that should have been paid and amounts actually paid). Even if damages have to be calculated on an individual basis, that is not grounds for denying class certification. *See, e.g., Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 28-29 (D. Mass. 2003).

**B. A Class Action Is Superior Because It Is The Most Efficient Method To Resolve These Claims.**

A class action is superior where it would promote economies of time, effort and expense, and uniformity of decision. *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 65 (D. Mass. 1997). A "case presents a classic illustration of the policies of judicial efficiency and access to courts that underlie the consumer class action suit [when] it aggregates numerous small claims into one action, whose likely range of recovery would preclude any individual plaintiff from having his or her day in court." *Weld v. Glaxo Wellcome, Inc.*, 746 N.E.2d 522, 532 (Mass. 2001). Here, similar circumstances demonstrate the superiority of litigation of these claims as a class action. Each subclass is so numerous as to make joinder highly "impracticable." With subclass members numbering in the thousands, it would be highly inefficient to litigate each subclass member's claims separately. Moreover, given the relatively small size of each individual subclass member's claim, a class action is the only realistic opportunity for him/her to vindicate his/her rights. In addition, individual trials would leave defendant vulnerable to inconsistent judgments.

Plaintiffs do not envision any difficulties in the management of this case as a class action. This court is an ideal forum for resolving this controversy. Because the evidence establishing Defendant's liability will be virtually identical for each subclass member, litigating this case as

an individual action will involve as much discovery and preparation as litigating on a class-wide basis. Therefore, judicial economy weighs heavily in favor of class certification. A class action is thus superior to other possible methods for the expeditious and efficient adjudication of this controversy.

## V. THE 93A SUBCLASS IS ALSO CERTIFIABLE UNDER MGLC 93A, §9.

The *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381 (2004), decision has profound pro-plaintiff implications for both the merits and class certification of MGLC 93A claims. That decision rejected many of the defenses to 93A liability and class certification that had been raised in the past by holding that 93A class claims are to be considered under the more liberal MGLC 93A, § 9(2) standard, instead of under the stricter Massachusetts Rule 23 standard. *Aspinall,* 442 Mass. at 391-92. In order to certify a class under Chapter 93A, a plaintiff must only show that "[a] the use or employment of the unfair or deceptive act or practice has [b] caused similar injury to [c] numerous other persons similarly situated and . . . that [the proposed class representative] [d] adequately and fairly represents such other persons." *Aspinall,* 442 Mass. at 384 n.6 (quoting MGLC 93A, §9(2)). As shown below, plaintiffs meet these requirements for certifying the 93A Subclass.

### A. There is a Common Unfair or Deceptive Act or Practice.

The common issue in *Aspinall* was "whether the defendants misrepresented material information concerning the design, function, [and] marketing [of their product, *i.e.,* Marlboro Light cigarettes] and, in doing so, violated 93A." *Aspinall,* 442 Mass. at 392-93. "Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis and not by the subjective measure argued by the defendants." *Aspinall,* 442 Mass. at 394. Conduct is misleading "when it has the capacity to mislead consumers, acting reasonably under the

circumstances, to act differently from the way they otherwise would have acted." *Aspinall,* 442 Mass. at 396. Because the issue of whether defendant's conduct is deceptive necessarily focuses on the defendant, "[n]either an individual's [] habits nor his or her subjective motivation in purchasing [defendant's product] bears on the issue whether the advertising was deceptive. *Aspinall,* 442 Mass. at 397. Finally, a deceptive representation "even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." *Aspinall,* 442 Mass. at 395 (citations omitted).

By making unauthorized COI Rate Increases, SunAmerica willfully and knowingly violated 211 CMR 95.06 and committed an unfair or deceptive act or practice within the meaning of MGLC 93A. Alternatively, by failing to make the filings required by 211 CMR 95.06, SunAmerica willfully and knowingly violated the MA DOI Regulations and committed an unfair or deceptive act or practice within the meaning of MGLC 93A.

**B. Defendant's Violation of 93A Caused Similar Injury.**

The requirement for similarity of injury is that "if the plaintiffs' allegations proved true, all of the members of the certified class would have suffered a similar injury that would most effectively be redressed through a G.L. c. 93A consumer class action." *Aspinall,* 442 Mass. at 392. The entire 93A Subclass has suffered the similar injuries of having their COI rates raised without authorization and/or having SunAmerica fail to make the required regulatory filings. "[B]ecause the injury claimed is an economic, and not a personal, injury, all [class members] have been similarly injured." *Aspinall,* 442 Mass. at 393. Each 93A Subclass member's damages can be measured by either (1) the difference between the policy premiums (plus unauthorized COI Rate Increases) actually paid on their insurance policies and the lower premiums (without unauthorized COI Rate Increases) they should have been charged by

SunAmerica, or (2) statutory damages of $25. *See Aspinall,* 442 Mass. at 400. This damage calculation should be straightforward but, even if it is not, that is no bar to class certification. *See Aspinall*, 442 Mass. at 402 ("Difficult issues with respect to determining the appropriate amount of actual or statutory damages to be awarded in a class action, or potential difficulties with the distribution of the aggregate damages award, do not preclude class certification when all other requirements are met.") (citing *Weld,* 434 Mass. at 92).

**C. Defendant Injured Numerous Other Persons Similarly Situated.**

The "numerous other persons" requirement is met by the common sense assumption that at least several hundred of the 400,000 polices that emerged from the Mutual Benefit Life rehabilitation must have been issued in Massachusetts. Named plaintiffs and the 93A Subclass are similarly situated because they were all injured in the same manner by defendant. Even if it is theoretically possible to conceive of members who were not injured in this way, the 93A Subclass must still be certified. *See Aspinall,* 442 Mass. at 393-94 ("reject[ing] the proposition that the purchase of an intentionally falsely represented product cannot be, by itself, an ascertainable [class-wide] injury under our consumer protection statute" even though conceding that "plaintiffs have no chance of demonstrating that every class member was injured").

**D. Plaintiffs Will Adequately and Fairly Represent Such Other Persons.**

The SJC emphasized that the motion "judge **must bear in mind** 'a pressing need for an effective private remedy' for consumers, and that 'traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.'" *Aspinall*, 442 Mass. at 391-92 (quoting *Baldassari v. Public Financial Trust,* 369 Mass. 33, 40-41 (1975)) (emphasis added). That is because, in a consumer class action where each Class member's damages are too small to be litigated on an individual basis, "a class action is not only an

appropriate method to resolve the plaintiffs' allegations, but, pragmatically, the only method whereby purchasers of Marlboro Lights in Massachusetts can seek redress for the alleged deception." *Aspinall*, 442 Mass. at 393 (citing *Weld*, 434 Mass. at 93). Since the named plaintiffs meet the adequacy requirements of Rule 23, *see supra* at §II.D, they have demonstrated that they will adequately and fairly represent the 93A Subclass.

**CONCLUSION**

This case meets all of the prerequisites for class certification which will "enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration." *Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972). Accordingly, plaintiffs request that the Court **GRANT** their Motion for Class Certification and certify both the Rule 23 Subclass and the 93A Subclass under Rule 23(b)(2) and/or Rule 23(b)(3).

Respectfully submitted,

DATED: 14 December 2005

_______/s/_______________

John Peter Zavez (#555721)
Noah Rosmarin (#630632)
ADKINS KELSTON & ZAVEZ, P.C.
90 Canal Street
Boston, MA 02114
Tel: (617) 367-1040
Fax: (617) 742-8280

**CERTIFICATE OF SERVICE**

I certify that on 14 December 2005, I caused a true copy of the foregoing document to be served electronically via the Court's electronic filing system on defense counsel.

______/s/________
John Peter Zavez