UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NANCY BROOKS AND JOAN SILVERMAN,                :

                Plaintiffs,       Civil Action
                               :   No. 05-10994-WGY
    v.
                               :
AIG SUNAMERICA LIFE ASSURANCE
COMPANY,                                        :

                Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT AIG SUNAMERICA'S (i) REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND (ii) OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

Plaintiffs' Opposition[2] curiously asks why AIG SunAmerica "is so intent on ending this case . . . .?" (Opp. at 2.)

The reason is simple: with all respect for the ingenuity of counsel, the central theory of the case is nonsense. Notwithstanding multiple opportunities, plaintiffs cannot produce the very "procedures and standards" that the entire case depends upon. Moreover, plaintiffs have already conceded that Mr. Silverman was charged substantially less than the agreed-upon maximum monthly cost of insurance increase. In these circumstances, why wouldn't AIG SunAmerica want the case concluded expeditiously?

---

[1] Capitalized terms herein shall have the same meaning as in the Memorandum Of Law In Support Of Defendant AIG SunAmerica's Motion For Summary Judgment (Docket No. 42), which is cited herein as "Main Brief at __."

[2] Plaintiffs' Opposition To Defendant's Motion For Summary Judgment And Plaintiff's Memorandum Of Law In Support Of Their Cross-Motion For Partial Summary Judgment (Docket No. 46) ("Plaintiffs' Opposition" (Cited as "Opp. at __.").

Five months ago, this Court ordered plaintiffs to identify "with some specificity the provision or provisions of the contract alleged to have been breached and the manner in which they were breached,"[3] but plaintiffs have been -- and continue to be -- unable to do so. Utter speculation aside, Plaintiffs' Opposition does not (and cannot) identify any "procedures and standards" on which plaintiffs base their entire case. The First Circuit has long maintained that mere "conclusory allegations, improbable inferences and unsupported speculation are not sufficient to create a genuine issue of material fact." Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (internal quotation marks omitted).

In addition to the reasons cited in the Main Brief, AIG SunAmerica's motion for summary judgment should be granted (and Plaintiffs' Cross-Motion should be denied)[4] for the following four reasons:

1.   Plaintiffs' argument that the Actuarial Memorandum contains the "procedures and standards" governing the alleged increase in monthly cost of insurance rates applicable to Mr. Silverman's Policy is unsupported -- and, indeed, contradicted -- by the plain language of that document. (Opp. at 2-3.) Not surprisingly, plaintiffs cannot cite to a specific provision of the Actuarial Memorandum that are the "procedures and standards" upon which they rely. Instead, plaintiffs assert that "COI, COI rates, annual COI rates, monthly COI rates, and changes to any of the preceding are all algebraically related" and "any changes to any of the COI-related variables [in the Actuarial Memorandum] will affect all of the other variables." (Id. at 2-3.) Assuming, arguendo, that those are correct statements, they are nonetheless entirely

---

[3]   October 5th Trans. at 8:9-19.

[4]   Plaintiffs' Cross-Motion For Partial Summary Judgment (Docket No. 47) ("Plaintiffs' Cross-Motion").

irrelevant to the issue here: what are the "procedures and standards" that govern those changes (i.e., what do plaintiffs contend that AIG SunAmerica was required to follow in making increases to the monthly cost of insurance rates applicable to the Policy).[5] The Actuarial Memorandum simply does not contain any such "procedures and standards." At most, the Actuarial Memorandum provides for the calculation of the maximum monthly cost of insurance rates allowed under the Policy, but plaintiffs have already conceded (and Plaintiffs' Opposition does not contend otherwise) that the monthly cost of insurance rates applicable to Mr. Silverman's Policy were far less than the permitted maximum pursuant to the contract. (See Main Brief at 6-7.)

        2.     Plaintiffs' alternative factual argument, that the "procedures and standards" are contained in the Purchase and Sale Agreement between MBL Life and AIG SunAmerica (the "Agreement"), also fails. (Opp. at 3-4.) Plaintiffs argue that the Agreement prohibited AIG SunAmerica from making any increase to monthly cost of insurance rates for Mr. Silverman's Policy prior to May 1, 2001.[6] (Id. at 4.) In purported support of that argument, plaintiffs cite to Section 4.18.1 of the Agreement, which provides, in part:

---

[5]    See Complaint ¶ 20 ("**[u]pon information and belief**, the COI Rates were not made 'in accordance with any procedures and standards on file with the Insurance Department of the jurisdiction in which'" the Policy was delivered (quoting Policy ¶ 14) (emphasis added).

[6]    Plaintiffs calculate May 1, 2001 by arguing (erroneously) that AIG SunAmerica could not increase monthly cost of insurance rates applicable to Mr. Silverman's Policy until the policy anniversary date 15 months after the end of the Rehabilitation Period which, according to plaintiffs, ended on June 30, 1999. (Opp. at 4.) As discussed below, the only factor that could not be increased pursuant to the Agreement is the cost of insurance scale, not the cost of insurance rate.

3

> **4.18.1 Modified COI Scale.** The Seller will use its commercially reasonable efforts to file and obtain all Permits necessary to permit <u>changes to mortality charges</u> as forth below (the "**Modified COI Scale**"). <u>Mortality charges</u> may be changed on the policy anniversary beginning 15 months after the Rehabilitation Period Termination Date to scales reflecting the greater of (a) actual mortality experience and (b) anticipated mortality experience based on the following formulas: . . . .[7]

Plaintiffs' argument is premised upon an error of law that confuses the terms "cost of insurance <u>scale</u>" (which is what the Agreement contemplates changing) and "cost of insurance <u>rate</u>" (which is what is reflected in the Policy). <u>Compare</u> the Agreement at SUN 000662 ("Modified COI <u>Scale</u>") (emphasis added) <u>with</u> the Policy, ¶ 14 ("cost of insurance <u>rate</u>") (emphasis added). The cost of insurance rate increases each year as the insured ages. (Policy, ¶ 14.) The cost of insurance scale (<u>i.e.</u>, the cost of insurance for each age) was the subject of § 4.18.1 of the Agreement (titled: "4.18.1 Modified COI Scale") (Agreement at SUN 000662). The Agreement further provides that "[i]n no event will any change in the Cost of Insurance <u>scale</u> increase the Cost of Insurance <u>rate</u> for any Reinsured Policy above the guaranteed COI <u>rate</u> contained in such Reinsured Policy." (<u>Id.</u> emphasis added.) Simply put, cost of insurance <u>rates</u> may increase as the policy holder ages, while the cost of insurance <u>scale</u> remains the same. In this case, Mr. Silverman got older and, accordingly, his monthly cost of insurance <u>rate</u> increased (but still far below the maximum permitted under the Policy). Nothing in the Agreement, or anywhere else, prevented an increase in the monthly cost of insurance rates Mr. Silverman paid.

In addition, monthly cost of insurance <u>rates</u> and <u>mortality</u> <u>charges</u> are not synonymous. <u>See</u> Order dated November 29, 2005 at 2 (Docket No. 29) (rejecting plaintiffs' argument that "mortality is the same as cost of insurance" and holding that "mortality is just one

---

[7]  Plaintiffs' Response To Defendant's Local Rule 56.1 Statement And Their Own Local Rule 56.1 Statement In Support Of Their Cross-Motion For Summary Judgment (Docket No. 48), Exhibit E at SUN 000662 (underlining added).

of the factors that comprises the cost of insurance calculation; it is not a synonym for cost of insurance as the [plaintiffs] suggest"). Thus, the Court has already considered and rejected plaintiffs' position.

       3.    Plaintiffs' third alternative factual contention is new. It concerns so-called "separate accounts," and is so confusing that AIG SunAmerica is at a loss as to how that argument relates to any allegation in the Complaint. (Opp. at 5-6.) Indeed, the Complaint nowhere says anything at all about separate accounts. Plaintiffs' newest argument demonstrates the "Whack-A-Mole"[8] nature of this case: as AIG SunAmerica demonstrates the legal fallacy of one theory, a new (and even more strained) theory pops up. Plaintiffs tacitly concede that they intend to use discovery to see if they can find anything to support such a claim. (Opp. at 6.) Those types of discovery fishing expeditions, however, are impermissible. See Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc., 357 F.3d 1, 9 (1st Cir. 2004) (affirming dismissal of complaint and holding that "discovery is not for fishing expeditions").

       Moreover, even if the Court were to entertain plaintiffs' latest argument, it also fails. First, plaintiffs do not claim that this new theory is in any way related to the still unidentified "procedures and standards" -- the sole breach of contract issue in this case. (See Compl. ¶¶ 20-21.) Second, plaintiffs' assertion that "an insurer cannot consider 'future expectations as to investment earnings' in calculating [monthly cost of insurance rates],'" presumably because monthly cost of insurance rates are deductions from a "separate account," is not supported by either of the Massachusetts Code of Regulations plaintiffs cite. (Opp. at 5

---

[8]     "Whack-A-Mole" is a popular arcade game which involves quickly and repeatedly hitting the heads of mechanical moles with a rubber mallet as they pop-up from their holes. Once whacked, the mole briefly disappears, only to emerge again, unfazed, from another hole.

(citing 211 Mass. Code Regs. 95.00 and 95.05).)[9]  As an initial matter, it is not at all clear from Plaintiffs' Opposition how the monthly cost of insurance rates of Mr. Silverman's Policy are related to a "separate account."  In any event, plaintiffs' argument fails for the more fundamental reason that consideration of "investment earnings" in the determination of monthly cost of insurance rates is not a deduction from a separate account.  (Policy ¶ 14 (emphasis added).)  Indeed, investment earnings would decrease the monthly cost of insurance rate, and therefore would be an addition to (not a deduction from) a separate account.  Plaintiffs' argument just does not add up.

4.   Lastly, Plaintiffs' Cross-Motion should be denied (again).  The Cross-Motion is predicated upon the same specious argument that plaintiffs' Cross-Motion For Judgment On The Pleadings (Docket No. 20) was based upon: that AIG SunAmerica somehow conceded or admitted liability in its motion to dismiss briefing.  (Opp. at 3, 5.)  During the December 14, 2005 motion hearing, the Court unequivocally denied that motion:

| | |
|---|---|
| **[AIG SunAmerica's Counsel]:** | Plaintiffs have cross-moved for judgment on the pleadings on the theory that defendant has somehow admitted liability. |
| **The Court:** | It's denied.[10] |

Plaintiffs' "admission" argument failed previously.  Nothing has changed.  Accordingly, the Cross-Motion should be denied.

---

[9]   Plaintiffs do not explain how 211 Mass. Code Regs. 95.00 and 211 Mass. Code Regs. 95.05 relate in any way to the cost of insurance rate applicable to Mr. Silverman's Policy.  Such broad, unexplained, citations to general regulations are unhelpful, and do not create a genuine issue of material fact.

[10]   Transcript of Motion Hearing dated December 14, 2005 at 8:1-4 (attached hereto as Exhibit A).

**Conclusion**

For all of the foregoing reasons, as well as those stated in the Main Brief, AIG SunAmerica's Motion For Summary Judgment (Docket No. 41) should be granted in its entirety and this case dismissed with prejudice. In addition, Plaintiffs' Cross-Motion (Docket No. 46) should be denied.

Dated: February 17, 2006
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
AIG SunAmerica Life Assurance Company

**CERTIFICATE OF SERVICE**

I, Michael S. Hines, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent to those indicated as non-registered participants on the NEF on February 17, 2006.

Dated: February 17, 2006

/s/ Michael S. Hines
Michael S. Hines

# EXHIBIT A

1

```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS
 2
                                         Civil Action
 3                                       No. 05-10994-WGY
 4

 5   * * * * * * * * * * * * * * * *
                                    *
 6   NANCY BROOKS and JOAN SILVERMAN, *
                                    *
 7           Plaintiffs,             *
                                    *
 8   v.                              *   MOTION HEARING
                                    *
 9   AIG SUNAMERICA LIFE ASSURANCE   *
     COMPANY,                        *
10           Defendant.              *
                                    *
11   * * * * * * * * * * * * * * * *

12

13          BEFORE:  The Honorable William G. Young,
                              District Judge
14

15

16   APPEARANCES:

17
              ADKINS, KELSTONE AND ZAVEZ, P.C.
18        (By John P. Zavez, Esq.), 90 Canal Street, 5th
          Floor, Boston, 02114, on behalf of the Plaintiffs
19
              SKADDEN, ARPS, SLATE, MEAGHER & FLOM
20        (By Michael S. Hines, Esq.), One Beacon Street,
          31st Floor, Boston, Massachusetts 02108, on behalf
21        of the Defendant

22

23
                                    1 Courthouse Way
24                                  Boston, Massachusetts

25                                  December 14, 2005
```

```
 1        THE CLERK:  Calling Civil Action 05-10994, Brooks
 2   v. AIG.
 3        THE COURT:  Good afternoon.  Would counsel identify
 4   themselves.
 5        MR. ZAVEZ:  Good afternoon, your Honor.  Attorney
 6   John Zavez for plaintiffs.
 7        MR. HINES:  Good afternoon, your Honor.  Michael
 8   Hines from Skadden, Arps, Slate, Meagher and Flom here in
 9   Boston for defendant AIG SunAmerica.
10        THE COURT:  I have asked for a document here and
11   you've sent in an affidavit saying they can't find that
12   document.  What do you say to that?
13        MR. HINES:  Well, your Honor, as Mr. Friedman's
14   affidavit states, that when AIG SunAmerica assumed these
15   policies, which were already in existence in 1999,
16   thereabouts, that document that you asked for which is
17   referenced in Paragraph 13 of the policy would have been
18   filed by a predecessor company.  And they are conducting a
19   search for that document which requires pulling boxes from
20   off-site storage and going through those boxes with all the
21   documents related to the acquisition of the policies and
22   also former employees.
23        THE COURT:  But until I -- let me frame it this
24   way.  Until I get that document ought I not draw an adverse
25   inference, on summary judgment, anyway, such that it would
```

1   keep the case alive?

2   **MR. HINES:** Well, your Honor, this is a motion for
3   judgment on the pleadings.

4   **THE COURT:** All right. And you're absolutely
5   right. Forgive me. Ought I not deny it because now I have
6   to dream up things that possibly would allow the case to go
7   forward, it's a fortiori, and I appreciate the correction.

8   **MR. HINES:** I would suggest, respectfully, not at
9   least insofar as one of the claims, and I'll get to that in
10  just one second if I might.

11  Your order asking for that document certainly
12  throws a wrinkle into the judgment on the pleadings as far
13  as the breach of contract claim and I'm inclined to agree
14  with your Honor on that point.

15  **THE COURT:** All right.

16  **MR. HINES:** However, there's, on the California UCL
17  claim, the unfair competition law claim, I would suggest
18  that, no, you do not need to, whatever that document may or
19  may not say, our motion for judgment on the pleadings is
20  independent of that document, and in fact I would further
21  suggest that your order of November 29th, 2005 rejecting
22  plaintiffs' argument that the Massachusetts Code of
23  Regulations requires such a finding, I would say is
24  dispositive of our motion for judgment on the pleadings as
25  to the UCL claim. And if I might --

1    **THE COURT:** Unless there's a breach of contract, I
2    see the two as related.
3    **MR. HINES:** Well, under the UCL claim, under
4    California law there has to be allegations of either
5    unlawful conduct or unfair conduct. As to the unlawful
6    prong, plaintiffs have relied on this Massachusetts Code of
7    Regulation requiring a filing of these procedures and
8    standards that are still unidentified. Your Honor in the
9    November 29th order rejected that argument and again
10   rejected it in their motion for reconsideration of that
11   order. And under California -- so what we're left with is,
12   at bottom, a breach of contract claim which under California
13   law as a matter of law that is insufficient to constitute an
14   unlawful act or practice because, as the California Supreme
15   Court has said, an unlawful conduct must violate a specific
16   constitutional provision, statute or regulation independent
17   of the UCL. And there's just no allegation or argument in
18   any briefing in light of your November 29th order that would
19   allow that claim to survive.
20   **THE COURT:** All right.
21   **MR. HINES:** Secondly, under the unfair piece of the
22   UCL analysis, while conduct that may be technically legal
23   could still violate the unfair prong of the UCL claim, if,
24   but only if, plaintiffs tied that conduct to, again, a
25   specific constitutional provision, statute or regulation.

```
 1   In light of your November 29th order, I would suggest that
 2   that fails as well.  So independent of the breach of
 3   contract claim it's our, defendant's position --
 4            THE COURT:  Thank you.
 5            MR. HINES:  -- that the UCL claim fails.
 6            THE COURT:  Thank you.
 7       Mr. Zavez, I think I can narrow this down, but I'll
 8   hear you if you disagree.
 9       I think under the unlawful prong of the UCL the
10   case fails -- the case fails.  Under the unfair prong, at
11   least as to a judgment on the pleadings, and drawing adverse
12   inferences from the failure to produce this document, it
13   survives.  I, likewise, think the breach of contract claim
14   survives under the motion for judgment on the pleadings.
15       Now, you ask for reconsideration of the Court's
16   ruling that you really have no argument under this claim
17   under the state regulations.  I'm actually going to give you
18   a chance on that.  And I will tell you if you can get the
19   Commissioner of Insurance to file an affidavit that she
20   views the regulation the way you do, I will reconsider that.
21   I don't read that regulation that way and I just don't think
22   it can be read that way.  And I'm not saying if I do get
23   such an affidavit I'll change, but I will think about it.
24       You have 30 days to file such an affidavit.  Am I
25   missing something here, Mr. Zavez?
```

```
 1        MR. ZAVEZ:  Your Honor, I would like to just
 2   revisit that point.  Well, two things.
 3        First of all, I think the Court may be acting
 4   prematurely as far as striking the unlawful prong without
 5   first seeing if there is a document and if there is a
 6   document what it contains.  I think when you look at the
 7   policy it's pretty clear that there's, there's an actuarial
 8   memorandum that needs to be filed in each state that
 9   explains how the policy values are calculated and as part of
10   that calculation you calculate the expenses and part of
11   those expenses are the cost of insurance piece.  So even
12   though there's no document called the cost of insurance
13   increase filing, it's contained within the filings they have
14   to make.  And I think that is what we'll find if the
15   defendants can expedite the process and produce a document
16   that will tie the pieces together.
17        THE COURT:  The interesting thing is, I must say
18   that my own analysis of this case is it's rather anomalous
19   for the Court on a motion for judgment of the pleadings to
20   say, well, wait a second, I want a little discovery and this
21   is what I want.  I recognize that.  But I will tell you that
22   I asked for that because I thought that would put paid to
23   your case.  I thought you would be done if they filed that.
24   I rather imagine that the document, if only they can find
25   it, will not be helpful to you.  But, since they haven't
```

|   |   |
|---|---|
| 1 | found it, I'm going to keep the matter alive. I can always |
| 2 | revisit unlawful if I have to. But I see no reason to. |
| 3 | **MR. ZAVEZ:** Your Honor, could I make one |
| 4 | further point? |
| 5 | **THE COURT:** Sure. |
| 6 | **MR. ZAVEZ:** It may be somewhat difficult to get the |
| 7 | Commissioner of Insurance to submit an affidavit, but would |
| 8 | an expert's affidavit or -- |
| 9 | **THE COURT:** No. |
| 10 | **MR. ZAVEZ:** -- a representative from -- |
| 11 | **THE COURT:** No. I want an affidavit -- well, I |
| 12 | don't say the commissioner but an authoritative person in |
| 13 | her office saying that. Anyone can find purported experts |
| 14 | to tell me that your interpretation of a regulation is |
| 15 | correct. You're a lawyer. I don't want that. I disagree |
| 16 | with that interpretation. And indeed, I think any fair |
| 17 | reading would disagree. But if she says she interprets that |
| 18 | regulation that way, well, that at least gives me pause, |
| 19 | though I think that's obscure. |
| 20 | Thirty days to file such a document. That's the |
| 21 | order of the Court. |
| 22 | **MR. ZAVEZ:** Thank you, your Honor. |
| 23 | **MR. HINES:** Your Honor, there is one other pending |
| 24 | motion. |
| 25 | **THE COURT:** And that is? |

```
 1       MR. HINES:  Plaintiffs have cross-moved for
 2   judgment on the pleadings on the theory that defendant has
 3   somehow admitted liability.
 4       THE COURT:  It's denied.
 5       MR. HINES:  Thank you, your Honor.
 6       (Whereupon the matter concluded.)
 7                      C E R T I F I C A T E
 8
 9
10       I, Donald E. Womack, Official Court Reporter for
11   the United States District Court for the District of
12   Massachusetts, do hereby certify that the foregoing pages
13   are a true and accurate transcription of my shorthand notes
14   taken in the aforementioned matter to the best of my skill
15   and ability.
16
17
18
19
20           _____
21                DONALD E. WOMACK
                Official Court Reporter
22                 P.O. Box 51062
             Boston, Massachusetts 02205-1062
23                womack@megatran.com
24
25
```